[L. A. No. 6716. In Bank.—November 10, 1922.]

## JOHN C. BREWER et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] RAILROAD COMMISSION—RULINGS ON EVIDENCE—SETTING ASIDE OF ORDERS—POWER OF COURT.—The supreme court has not the authority under its limited powers of review to set aside orders of the Railroad Commission in matters over which it has been given jurisdiction, because of errors in the admission or rejection of evidence, unless there has been an entire exclusion of evidence on one side touching the essential matter in issue amounting to a denial of due process of law.

[2] Id.—Fixing of Water Rates—Status of Company—Exclusion of Evidence—Effect of.—The refusal of the Railroad Commission in a proceeding fixing rates to be charged by a water company to permit certain protestants to present evidence that the company as to them was not a public utility under their water rights agreements was not a denial of due process of law, where the main substance of such evidence was before the commission in the form of the record of the evidence presented before the commission in several earlier proceedings involving the same issues.

[3] Waters and Water Rights—Public Utility—Evidence.—Declarations of the original appropriators of the waters of a river and of the corporation formed by them as to the purposes of such appropriation, and the statement in the articles of incorporation of the corporation's purposes are insufficient in themselves to justify a finding that the waters were to be devoted to a public use or that the corporation was a public utility.

[4] Id.—Public Utility—Acts of Corporation.—Where the articles of incorporation of a corporation formed by the appropriators of the waters of a river declare its purpose to be that of utilizing the water for general public consumption, and the corporation's acts are consistent with such declared purpose and its contracts for acquisition of rights of way and for distribution expressly stipulate that the water rights granted thereby are subject to "legal rates," a finding is justified that the corporation is a public utility.

[5] Id.—Dedication to Public Use.—Revocation.—A water company which has dedicated its waters to a public use cannot revoke such dedication and convert its waters into a private use without the consent of all the beneficiaries of such use.

[6] Id.—Proceeding to Fix Rates—Status of Company—Estoppel of Consumers—Effect of Prior Proceedings.—Water company consumers who either by appearance or by affirmative action have submitted themselves and their water rights to the jurisdiction of the Railroad Commission in proceedings touching the water rates without seeking a review of the rulings by the courts and who have paid the rates established by the commission on the theory and finding that the company was a public utility, are precluded from claiming in a subsequent proceeding to fix rates that the company, as to them, is not a public utility, and from standing on their water rights agreements.

APPLICATION for a Writ of Certiorari to review orders of the Railroad Commission fixing water rates. Denied.

The facts are stated in the opinion of the court.

Jesse George and Clarence S. Preston for Petitioners.

Hugh Gordon and William W. Clary for Respondent.

C. C. Crouch and Sweet, Stearns & Forward for certain Applicants.

RICHARDS, J., *pro tem.*—This is an application of John C. Brewer and a large number of other users of the water of the Cuyamaca Water Company for a writ of review wherein it is sought to have reviewed and annulled certain orders of the Railroad Commission affecting the rates paid and to be paid by said applicants for the use of water of the said company upon their respective premises. The immediate subjects of review are three separate proceedings instituted before the commission affecting such rates but which were ordered by the commission to be heard together upon the same evidence as to each proceeding. These were: First, a proceeding instituted April 15, 1919, by the Cuyamaca Water Company, a copartnership maintaining a water system in the county of San Diego for distribution of water for agricultural and domestic uses, seeking a general increase in the water rates of said company; second, a proceeding instituted shortly thereafter by the same applicant for an emergency surcharge upon its rates then in effect; third, a proceeding instituted by Robert Ross et al., embracing a considerable number of the petitioners herein who were domestic users of water of said copartnership, charging unjust and discriminatory rates and poor service, and asking for a readjustment of water rates. Upon the grouping and hearing of these three proceedings the commission took certain testimony, refused to take or consider certain other testimony and finally made the several orders sought to be reviewed herein. In order to rightly understand and pass upon the questions presented herein it will be necessary to give a brief recital of the history of the Cuyamaca Water Company and its predecessor, the San Diego Flume Company, and of the prior proceedings before the Railroad Commission bearing on the matters herein subjected to review.

The source of the water supply of the water system now owned and operated by the Cuyamaca Water Company is the San Diego River, which rises in the mountains to the

northeast of the city of San Diego and flowing in a general southwesterly direction enters the ocean just north of said city. In its course it passes through the El Cajon Valley, which embraces an extensive body of agricultural land. This valley was part of an old Mexican grant, known as Rancho El Cajon, which embraced many thousand acres of land and which came to be partitioned in the year 1874 into twenty separate parcels. In the year 1885 Henry B. Lockwood and ten other persons owned in severalty practically all of the best agricultural lands in the El Cajon Valley, which lands, however, had remained undeveloped for want of water, without which they were of small value. In the latter year W. E. Robinson, T. S. Van Dyke and S. H. Marlette united in filing upon and appropriating twenty-one thousand inches of the waters of the San Diego River, being practically its entire ordinary flow. The notices of appropriation stated "that the places where said water is intended to be used are as follows: the lands and rancho El Cajon, on the mesa between El Cajon and the city of San Diego, and the city of San Diego." In order to carry into effect these purposes by means of the proper canals, ditches, etc., Robinson and his associates entered into an agreement with said land owners in the El Cajon Valley wherein the former agreed to construct the necessary diversion and irrigation system to bring said waters to said and other lands, in consideration of these land owners transferring to them all of their rights as riparian owners in and to the waters of the San Diego River and also granting to them the necessary rights of way over their respective parcels of land for canals, pipelines, etc. This agreement contained the following recitals:

"Whereas, W. E. Robinson and associates are about to establish and provide for a system of water works for the purpose of providing water with which to irrigate the lands of the Cajon Valley, part of the lands known as the Ex-Mission of San Diego, and also to provide water for distribution and sale in the city of San Diego (all in the county of San Diego) State of California; and for that purpose will on or before the first day of January, 1886, commence actual operations for the construction of necessary dams, aqueducts or pipe lines to impound and secure the waters of the San Diego River at a point east of the said Cajon Ranch, and to conduct said water to and upon the lands and places afore-

said as far south as the gate entering L. Chase's orchard, and will thereafter prosecute their said business with reasonable diligence and without unnecessary delay until it is brought upon and ready for sale and distribution in the Cajon Valley, as aforesaid, and thereafter continue their said works so as to bring the surplus of the water so impounded and secured to and upon the mission land aforesaid and to said City of San Diego for distribution therein.''

Upon the execution of this agreement Robinson and his associates organized a corporation known as the ''San Diego Flume Company,'' with a capitalization of a million dollars, to which they transferred all of their rights acquired under said appropriation and also said agreement, receiving as the consideration therefor capital stock of the said corporation to the amount of $450,000 par value. The original articles of incorporation of the San Diego Flume Company stated ''that the purposes for which it is formed are to appropriate, divert and take water from the San Diego River and other streams in the county of San Diego, California, and convey and sell the same for irrigation, domestic use, mechanical purposes and use by the city of San Diego and other cities and towns in said county; to build and maintain dams, reservoirs, and any kind of aqueduct or flume; to reclaim and improve by supplying with water, dry lands in said county, and to that end to acquire, hold and convey real estate.'' The San Diego Flume Company at once upon its organization reposted and recorded its own notices of appropriation of the waters of the San Diego River, in which notices of appropriation it was provided that ''said water is appropriated, claimed and intended for irrigation, domestic and mechanical purposes. The places where it is intended to use said water are the City of San Diego, Ex-Mission Ranch, rancho El Cajon.'' The company at once proceeded with the development of its water system. During the year 1886 the corporation acquired by purchase 3,145 acres of land in what is known as the Rancho Ex-Mission, lying to the westward of the El Cajon Valley and between its lands and the city of San Diego, and caused said lands to be surveyed and platted so that one thousand acres thereof was subdivided into one hundred tracts of ten acres each, two hundred acres thereof into villa lots of smaller dimensions, and

eighty acres thereof into town lots, each of an area of fifty by one hundred feet. The corporation then proceeded to sell off this tract of land, as thus subdivided, under a form of contract by which, through the medium of certain trustees, the corporation agreed to give to each purchaser of one of said ten-acre tracts one of said town lots and also agreed to convey to each owner of a ten-acre tract a perpetual water right to one miner's inch of water at an annual rental of three dollars per acre. The contract for the sale of these lands upon said terms stipulated that the water company was to extend its aqueduct into the city of San Diego, and this being done, to supply water to the holders of town lots for use thereon at city rates. The owners of the larger or ten-acre tracts were, however, to be first supplied with water before supplying any other lands or lots therewith. While the San Diego Flume Company was thus developing its water system for use upon its own lands it was also, beginning with the year 1886 and continuing down to the year 1910, engaged in making water right contracts with the various owners of land in the El Cajon Valley and also in the Ex-Mission Rancho aforesaid outside of its own holdings therein. The first of these contracts and in fact the first water right contract executed by said corporation appears in the terms and conditions of a deed made by one Hawley to said corporation, conveying to it an undivided one-half interest in certain lands in El Cajon Valley, wherein one of the conditions subsequent to the grant was stated to be that "the said Flume Company is within three years to build a flume or other aqueduct across or adjacent to said tract of land carrying water for irrigation according to the purposes of said company's incorporation and shall grant to the grantor, his heirs, representatives or assigns, a right to the use of water from said flume or aqueduct at the legal rates and to the amount of one inch, measured under a four-inch pressure for each ten acres of arable land in such portion as may be assigned to grantor in partitioning. Such water right is to be perpetual and without further compensation except the legal rates aforesaid, and subject only to the act of God, of the law, or public enemy." The amount of water to be supplied under this contract was seventy inches. A second water right contract was made with Hawley a few weeks after the date of said deed by

which he agreed to buy water from the San Diego Flume
Company for use on certain other described lands in San
Diego County, the contract containing the same provision as
that above quoted from the former one. Still later in the
same year a third contract was made with Hawley in sub-
stantially the same form as the two prior agreements and
wherein it was repeated that said Hawley was to have his
designated "right of water from said flume or aqueduct
at the legal rates." About the time of the making of these
contracts with Hawley the San Diego Flume Company
entered into a contract with Wendell Easton, George W.
Frink and Frank B. Wilde, owners of a tract of land in
El Cajon Valley, known as "S" or "Jarvis tract," by the
terms of which certain rights of way for its aqueducts,
flumes and other waterways were granted by the latter to
the corporation, which, in turn, granted to said Easton,
Frink and Wilde, "the right to purchase for the sum of
$10.00 an acre, any portion of two hundred water rights
to be taken from the flume line to any point or points on
said line that the said parties or their assigns may select.
Each of said water rights is to be one miner's inch under
a four-inch pressure to each fifteen acres of land to be
designated as hereafter provided and at the legal rates as
fixed by the supervisors of said county, in addition to the
price of said water right. . . . Said water right is to be
perpetual and without further compensation except the legal
rates aforesaid." During the years 1887 and 1889, in-
clusive, six other agreements for water rights were entered
into between the corporation and the following water users,
viz.: Terralta Land and Water Company, F. J. Wrample-
meier, El Cajon Vineyard Company, C. F. Francisco, El
Cajon Valley Company and Uri Hill. Each of these
six agreements was in substantially the same form as
the others and each provided for the annual payment of a
fixed water rate for each inch of water supplied to the
lands of these respective water users and each also con-
tained the proviso that "if said land is hereafter included
within the limits of any incorporated city or town, said
company may demand city rates etc." It seems to be con-
ceded that the provisions of the several contracts above
referred to as having been made by the San Diego Flume
Company between the years 1885 and 1889 have reference

to the rate-fixing powers of the board of supervisors of the counties under statutes then in effect, and applying generally to water companies. On February 24, 1891, on petition of a number of inhabitants within the region then being supplied with water by said corporation, the board of supervisors of the county of San Diego, purporting to act under the then existing statutes (Stats. 1885, p. 95), adopted an ordinance fixing a maximum water rate to be charged by said corporation at one hundred and twenty dollars per miner's inch per annum. It appears, however, that the San Diego Flume Company at the time was not charging any of the persons to whom it was then supplying water under its outstanding agreements a rate equal to that fixed by said ordinance as the maximum rate it would be entitled to charge; and it also appears that in its subsequent agreements for the supplying of water to its customers during the period that said ordinance remained in force it never provided for a charge equal to said maximum rate. Between the years 1889 and 1909 the San Diego Flume Company, as its business and water system expanded, made a large number of contracts with various persons and corporations for the sale of its water. Some of these were with land owners directly; some were with other water companies purchasing water in quantity for distribution among their own customers upon their own terms; some were with persons or corporations using the water for other purposes than either irrigation or domestic uses. Some of these agreements provided for such water rates as might be fixed by law. Others provided for flat rates, omitting any such provision. It may be pertinent to note at this point that after the board of supervisors of said county had assumed jurisdiction to regulate the water rates to be charged by the San Diego Flume Company through its ordinance, above referred to, the said water company undertook to secure, and did, in fact, secure, the modification of its foregoing agreements with Hawley, with Easton, Frink and Wilde, and with other land owners in the El Cajon Valley, by the terms of which new agreements the clause in each of the said original agreements "at rates fixed by law" was eliminated. It may be also noted that as to certain of the agreements by the corporation for the sale of water to new subdivisions or districts opened up for water consumption

after the date of the said ordinance and outside of El Cajon Valley, the provision for the sale of water subject to "legal rates" was expressly retained. The significance of both these states of facts will be later commented upon. In the year 1910 the San Diego Flume Company sold and conveyed all of its property and rights in and to its aforesaid water system and all outstanding agreements relating thereto to one James A. Murray, who shortly thereafter formed a partnership with one E. Fletcher, under the firm name of Cuyamaca Water Company. Subsequently W. G. Henshaw became a member of this firm. Said copartnership has since been operating said water properties and system under said name. By the terms of the transfer by the corporation to the copartnership the latter became obligated to perform the terms and conditions of all outstanding water contracts to be theretofore performed by said corporation. On June 25,. 1912, the individuals comprising the copartnership of the Cuyamaca Water Company filed an application before the Railroad Commission for an order authorizing said applicants to increase the water rates then being charged their consumers in the county of San Diego. Notice of the hearing upon said application was ordered to be given. by publication in four newspapers within the region covered by the water distributing system of said applicants and such notice was so published according to the terms of said order. A considerable number of the customers of the applicants appeared upon the hearing of said application, the domestic consumers and certain consumers taking water for irrigation purposes being separately represented by counsel and opposing the application upon different grounds. As to just who or what number of persons was represented by the counsel who appeared for the consumers taking water for irrigation purposes does not very clearly appear, the record merely showing that Haines & Haines and D. G. Gordon appeared for certain protestants of this class without identification by name, Mr. Gordon, who was himself a land owner in the "S" tract, stating that he appeared "for the water users on the main flume," while Mr. Haines stated that he represented the holders of water rights contracts to 428 inches of water, a list of the names of whom had been furnished by the applicants to the commission. Upon the hearing all of the water rights contracts of the San Diego

Flume Company were presented in evidence and the Railroad Commission in its decision engaged in a very exhaustive examination into the history, business and status of the former San Diego Flume Company, including an investigation of all of these outstanding water contracts which were presented in evidence before it and to which in said decision it specifically refers. The conclusion of the commission as a result of such investigation was that the Cuyamaca Water Company was from its inception a public utility, and, as such, subject to the jurisdiction of the commission as to its water rates. The commission then proceeded to fix the water rates to be allowed to be charged these several classes of consumers, which rates were in most, if not all, cases, higher than the rates which had been theretofore charged and collected under the terms of the outstanding agreements. The commission further found that the main flume or aqueduct of the water company was in a bad state of deterioration, requiring immediate renewal, and as a condition to the proposed increase in the rates of the applicants provided that such increased rates should not be charged or collected until the applicants had complied with the requirement of the commission with respect to the renewal of its flume or until they had satisfied the commission that they were proceeding to comply therewith in good faith. No application for a rehearing before the commission as to the matters covered by its aforesaid orders was made by any of the parties who had appeared before it, nor by any other of the water users affected by said orders, nor was any application made to the courts calling in question the jurisdiction of the said commission to make or enforce its said orders.

Between March 28, 1913, the date of the decision of the Railroad Commission upon this first proceeding before it, and September 24, 1920, the date of the decision of the commission which is assailed in this proceeding, the Cuyamaca Water Company was before the Railroad Commission upon numerous occasions, and in fifteen or more separate proceedings in which its water rates were involved. In the latter part of the year 1913 the copartnership filed another application for an increase in water rates, based upon certain alleged outlays in the improvement of its plant. In this proceeding, as in the former one, D. G. Gordon and the

firm of Haines & Haines appeared as representing irrigation customers of said water company holding water right agreements. Whether said counsel represented all of this class of the customers of the water company does not expressly appear from the record of said proceeding, but the objection urged by them was to the effect that the applicant was not entitled at said time to an increase in water rates for the reason that it had not complied with the order of the commission, made in the previous proceeding, as to the replacement of its' flume. The ruling of the commission was inconclusive, holding the matter of an increase of the rates of the applicant in abeyance until it had complied with the commission's earlier order. In July, 1914, the Cuyamaca Water Company again applied to the commission for an order authorizing a general increase in its water rates. In this proceeding quite an array of counsel appeared representing various classes of the applicants and consumers, among these D. G. Gordon appeared for consumers on the flume line; or, in other words, irrigation consumers. The firm of Haines & Haines also again appeared as representing Lemon Grove Mutual Water Company and Fairmount Water Company. A little later in the same year D. G. Gordon, purporting to represent himself and approximately one hundred other persons having contract rights to water from the main flume, filed a complaint before the commission alleging mismanagement and defective distribution on the part of the San Diego Flume Company and praying for both general and specific relief. It is conceded in the briefs of the petitioners herein that said D. G. Gordon and his counsel, Sumner & May, represented in said proceeding practically all of the petitioners herein. This proceeding was by the commission heard together with the then pending proceeding last above referred to. Public hearings were held in the city of San Diego covering in all about two weeks, during which time, by stipulation of counsel, all of the evidence taken upon the several prior proceedings of the same applicants before the commission was presented in evidence in that proceeding. While said proceeding was pending and undetermined, the Cuyamaca Water Company, in November, 1914, entered into a contract for the sale of its water system to an irrigation district, which had been formed within the region occupied

by its water system, and it was represented to the commission that an application would be presented to the commission for the fixation of the price at which the Cuyamaca Water Company might be permitted to make said sale. In view of this impending transfer the commission concluded that it would be ill-advised to make any present change in the water rates of the applicant. In its order deferring the matter for future consideration the commission recited as a fact established before it that while as yet the applicant had not complied with the earlier order of the commission in the matter of the replacement of its flume it had been collecting from its water consumers the increased water rates provided for in its said earlier decision. There were during the year 1915 several proceedings before the Railroad Commission affecting, with one exception, consumers of the product of the Cuyamaca Water Company other than the petitioners herein and which need not be adverted to other than to note that in all of said proceedings the water company was alleged to be treated as and dealt with in the capacity of a public utility by all parties concerned. The excepted proceeding was one instituted by the La Mesa Development Company as the holder of a contract entered into on February 7, 1908, with the San Diego Flume Company wherein the latter agreed to supply the former with 150 miner's inches of water upon demand therefor at any time within twenty years, for use upon lands belonging to the development company, the consideration of which agreement being the sum of $120,000. The contention of the applicant in that proceeding was that its contractual rights to such water had been injuriously affected by that portion of the order of said commission made on March 28, 1913, in the first proceeding above referred to forbidding the water company from adding any more consumers to its system except domestic consumers. The commission upon the hearing of this proceeding modified its earlier order by adding thereto this provision: "Provided however it is not intended by this order to prevent the said James A. Murray and Ed Fletcher (the then owners of the Cuyamaca Water Company) from performing any valid contract for the supply of water which existed at the time of making this order, to wit, March 28, 1913, made by the San Diego Flume Company, predecessor in interest of the said James A. Murray

and Ed Fletcher.'' The petitioners herein were not parties to that proceeding.

The prospective sale of the properties of the Cuyamaca Water Company to the irrigation district not having been consummated and a sale of its water system to the city of San Diego having also fallen through, the Cuyamaca Water Company, on the sixth day of January, 1916, renewed its application theretofore made before the commission for a general increase in its water rates. In this proceeding the same array of counsel appeared purporting to represent the several sets of consumers which had been represented by them in earlier proceedings. By stipulation between counsel for the several parties to the proceeding all evidence introduced before the commission in the several earlier matters was admitted in evidence in the instant proceeding, the hearing otherwise thereon occupying several days and the decision thereon being delayed until January 25, 1917, at which time the commission rendered its decision, in which it recited the history of the several prior proceedings before the commission and its rulings upon the questions presented therein. Among other things, the commission ruled that upon the representation to it that the Cuyamaca Water Company was proceeding in good faith to comply with the order of the commission in the first proceeding before it as to the reconstruction of its main flume the company had been permitted to charge and collect from its consumers the rates specified in said earlier order and that said rates had been accepted without contest by the water company's consumers and had been in effect continuously since July 1, 1913, after an exhaustive review of the present condition of the properties of the water company and after directing certain betterments to be made in storage and transmission system and after reciting that there had been considerable difficulty in the application of the water company's existing rates, which difficulties and discriminations it proposes to remove by the adoption of a block rate applicable alike to all consumers under the same conditions, said block rate to provide a uniform rate for general use with a separate rate for irrigation use in excess of two thousand cubic feet per month. The commission accordingly adopted a schedule of rates applicable to all of the consumers of the water company, regardless of the origin of their rights to water

service, to be effective on and after March 1, 1917. No petition for a rehearing was presented by any of the parties to said proceeding or affected by said order, nor was any application for a writ of review presented or filed in the courts.

The next proceedings before the Railroad Commission were that which the petitioners herein seek to have reviewed. On April 13, 1919, the Cuyamaca Water Company instituted said proceedings before the Railroad Commission seeking a general increase in its water rates. Shortly thereafter, alleging certain abnormal conditions in the cost of service to be then existing, the Cuyamaca Water Company filed another application before the commission for a surcharge upon its water rates then in effect. Several months prior to the inception of these two proceedings and on September 5, 1918, a proceeding had been instituted before the commission by Robert Ross et al., consumers of water furnished by said water company within certain territory adjacent to the city of San Diego, wherein it was alleged that the water rates and charges of the Cuyamaca Water Company were excessive, unreasonable and discriminatory as to them; that the valuation of the property and plant of said water company fixed by said commission in its earlier orders was excessive; that the service was bad and the water furnished unfit for human consumption, and praying for an order of the commission establishing just and reasonable rates as to said petitioners and for general relief. On the 14th of July, 1919, an order was made by the Railroad Commission that the matters be heard together on the twenty-second day of July, 1919, and ordered general notice to be given to all of the consumers of the Cuyamaca Water Company, by both posting and mailing, of the pendency of these proceedings and of the date of hearing thereon. On said date a considerable number of the petitioners herein who had received said notices of the hearing upon said proceedings appeared and verbally protested against the immediate hearing hereon. The commission, however, proceeded to take testimony in said proceedings without regard to said verbal protests and without allowing the protestants time or opportunity to present evidence in support of their objections; and thereafter and on August 11, 1919, filed its decision in the matter of the

application for a surcharge upon existing rates allowing such surcharge as against all water users and fixing the amount thereof, such surcharge to be effective from the date of said decision and to remain in effect until January 1, 1920, unless otherwise ordered by the commission, as to the matter of the adjustment of the entire rate schedule of the water company, pursuant to its application therefor and as to the question of the jurisdiction of the commission in such adjustment to alter the rates of consumers holding water right agreements. Both of such matters were held in abeyance by the commission until a complete hearing would be had thereon. Thereafter and on August 30, 1919, a considerable number of consumers filed with the commission an application for a rehearing upon the decision of the commission relative to the imposition of a general surcharge upon their water rates, wherein they set forth that certain of said applicants were the holders of contracts with the San Diego Flume Company entitling the holders thereof to be furnished with water by the Cuyamaca Water Company as the successor of the San Diego Flume Company at a fixed rate and charge, which was much less than the rate and charge allowed by said decision, and that said decision of the commission, in so far as it attempted to impose a higher rate and charge upon said applicants, was in excess of the jurisdiction of the commission and violative of the constitution of the United States and of the state of California. They also alleged various other grounds of irregularity in the proceedings of the commission and of insufficiency of notice thereof as grounds for a rehearing upon said matter. Thereupon and on October 21, 1919, the commission made an order fixing December 19, 1919, as the date for a hearing upon said last-named application and also as the date for a general hearing upon the other applications of the several matters involving the water rates of the Cuyamaca Water Company then pending before it. Prior to the date set for said hearing a large number of petitioners herein holding water rights contracts from the San Diego Flume Company filed an answer to the petition of the Cuyamaca Water Company for a general increase of its water rates, wherein two separate and specific objections and defenses thereto were set forth. By the first of these the power and jurisdiction of the Railroad Commission to entertain or

conduct any proceeding for the fixation of water rates of the Cuyamaca Water Company so as to affect injuriously the rights of said protestants as the holders of said water rights agreements was directly assailed. By the second of these defenses the application of the Cuyamaca Water Company for a general increase in rates was objected to upon the ground that the water system and properties of the applicant for such increase were mismanaged and were not economically operated and, hence, that their said application should be denied. At the time of filing their said answer to the application of the Cuyamaca Company for a general rate increase, the said protestants therein, who are also the petitioners in the instant proceeding, also filed with said commission a cross-complaint, wherein, in addition to the matters set forth in their answer and protest above referred to, they affirmatively set forth that the water rates charged by the said water company under the previous orders of the commission establishing and fixing the rates to be charged and collected by said water company and particularly under the order in that behalf made on March 6, 1917, are excessive, unreasonable, unjust and discriminatory in a large number of specified particulars, and praying for the setting aside of the several previous orders of the commission establishing and regulating the water rates of the Cuyamaca Water Company and for a revaluation of the water system and properties of said water company and the establishment of reasonable rates. In their said cross-complaint the petitioners herein seek to have whatever rights they possess under their respective water rights contracts preserved and to have such re-established rates applied only to such excess of water supplied by said water company to them above the amount called for by the terms of their said water rights contracts. The hearing upon the matters put in issue by the aforesaid answer and cross-complaint of said protestants, the petitioners herein, came before the commission upon the date set for the general hearing upon the other matters then pending before it. The petitioners herein were present and were prepared to produce evidence upon said hearing in support of the averments of their answer as to the existence and validity of their respective water rights contracts and in support of their objection that the commission had no power or juris-

diction to make any order or orders affecting the vested
rights of said protestants acquired thereby nor to establish
or enforce any water rates schedule or charge increasing the
rates of said protestants as fixed by said agreements. The
Railroad Commission refused to permit the said protestants
in support of their said pleadings upon said hearing to
present any evidence or proof to establish or show the
existence or validity of any of their said water contracts
and refused to permit the protestants to offer in evidence
said contracts or to prove or show that the San Diego Flume
Company, from which they had received their said con-
tracts, was not a public utility in respect to the water cov-
ered by the terms of said contracts; upon the ground that
in the previous proceedings before the commission it had
been decided that the San Diego Flume Company was from
its inception and as to all its water users a public utility,
and, hence, that such evidence on the part of the protestants
and cross-complainants was immaterial; to all of which rul-
ings the protestants objected at the time of said hearing.
The commission, notwithstanding its refusal to allow the
protestants to introduce in evidence their water rights con-
tracts and also the other evidence proffered by them tend-
ing to show that the San Diego Water Company was not
a public utility at the time of the making of said agree-
ments, did upon its own motion put in evidence in said
proceeding all of the evidence which had been offered in
evidence before it in the several proceedings involving the
fixation of water rates which had been heard before it in
the previous years, and which not only embraced all of the
contracts and records of the San Diego Flume Company
but included also the history of the development of said
corporation and of its water system from the inception of
its organization and acquisition by appropriation of the
waters of the San Diego River for the uses and purposes
specified in both the original and reposted notices of such
appropriation. The commission had, therefore, before it in
the course of said proceeding a very considerable portion
of the evidence which it had not permitted the protestants
on their own behalf to offer. At the conclusion of said
hearing the protestants presented in writing their formal
protest in much of detail against the exclusion of such
evidence and against the alleged arbitrary action of the

commission in excluding the same, and also against certain
other rulings of the commission excluding certain other
offered evidence of the protestants and cross-complainants
respecting the alleged mismanagement of the affairs and
properties of the Cuyamaca Water Company. Said formal
protest so filed was accompanied by a motion that the com-
mission reopen the hearing and admit such evidence.
Thereafter and on September 24, 1920, the commission
denied the protestants' motion to reopen the case, the com-
mission filing at said time its opinion and order covering
all of the proceedings then pending before it and providing
for a general increase in the water rates of the applicant
for such increase. Thereafter the protestants filed a peti-
tion for rehearing wherein all of their prior objections and
protests against the power and jurisdiction of the com-
mission to establish water rates affecting their vested rights
under their said water rights contracts were restated, which
petition was by the commission denied on October 8, 1920.
Thereafter and on October 22, 1920, the said protestants
filed in this court their present petition for a writ of re-
view.

[1] The first contention of the petitioners herein is that
they are entitled to have the proceedings of the Railroad
Commission assailed herein reviewed and their orders made
therein annulled by reason of the alleged arbitrary action
of the commission in its refusal to permit said petitioners,
as protestants in said proceedings, to present their evidence
upon the issue as to whether or not the San Diego Flume
Company was a public utility and to present in evidence
their several water rights agreements upon said issue and
in support of their contention that as to them, and as to
said contracts with them, said corporation was not a public
utility. In addressing ourselves to a determination of this
question it must be conceded that if the question as to
whether the San Diego Flume Company was from its incep-
tion forward a public utility was in fact an issue before
the commission in said proceedings, the refusal of that body
to admit the evidence proffered by the protestants upon that
issue would have been grave error which upon an ordinary
appeal would have compelled a reversal. But this is not
an ordinary appeal, nor has this court the authority,
under its limited powers of review, to set aside orders of

the Railroad Commission in matters over which it has been given jurisdiction, because of errors in the admission or rejection of evidence. If, however, the error of the commission in this regard had amounted to the entire exclusion of evidence otherwise admissible touching the essential matter in issue before it, so that in deciding such issue the commission had so arbitrarily ruled as to permit but one side of the controversy to be litigated before it, we would have no hesitancy in deciding upon *certiorari* that such arbitrary action on the part of the commission had amounted to a denial of due process of law so as to divorce it of jurisdiction to decide the matter before it. [2] But that is not this case, as presented in the record before us, since it appears that notwithstanding its rulings in the exclusion of their evidence, of which the petitioners herein complain, the main substance of that same evidence was presented before the commission in said proceeding in form of the record of the evidence presented before it in the several earlier proceedings involving the same issues. The petitioners here in fact predicate a large part of their contention and argument that the San Diego Water Company was not from its inception, or ever, as to them, a public utility upon such evidence. This being so, and the commission having in fact before it the main amount of the substantial evidence upon which the petitioners rely to support their present contention, this court cannot say that the error of the commission in refusing to admit such evidence in the first instance and upon its proffer by the protestants amounted to a denial of due process of law so as to oust the commission of jurisdiction to render its ultimate decision sought to be reviewed herein.

[3] The next contention of the petitioners herein is that, upon the undisputed evidence which was actually before it, the Railroad Commission cannot rightfully draw the conclusion that the San Diego Flume Company was from its inception, or ever as to their contractual rights as water users, a public utility. This involves a brief consideration of that evidence. It is true that the declarations of the original appropriators of the waters of the San Diego River and of the corporation formed by them as to the purposes of such appropriation would not in themselves suffice to justify a finding that such waters were to be

devoted to a public use or that such corporation was a public utility. (*Palmer* v. *Railroad Commission,* 167 Cal. 163 [138 Pac. 997].) Neither would the statement of the corporation in its articles as to its purposes be sufficient in itself to support a finding on the part of the Railroad Commission that such corporation was a public utility. (*Del Mar Water Co.* v. *Eshleman,* 167 Cal. 666 [140 Pac. 591, 948].) [4] When, however, the original appropriators of water from a stream, having declared that their purposes are to secure that commodity for general public consumption, organize a corporation which, in its articles of incorporation, declares its purposes to be that of utilizing the water thus acquired for sale for irrigation, domestic use, mechanical purposes and for use generally in cities and towns within the zone of its proposed distributing system; and when such corporation proceeds under such declared purposes to establish a distributing system having both a regional and a constructional amplitude, a direction and a destination consistent with such purposes; and when such corporation in its earliest contracts for the acquisition of rights of way for its aqueducts, canals, pipes, etc., and for the distribution of its waters therein, expressly stipulates that whatever water rights were therein granted were to be subject to "legal rates"; and when the recitals of such agreements in most instances showed that the city of San Diego and other existing or proposed towns and town sites were to be supplied and served with water from the company's distributing system and when in fact such corporation proceeded, as rapidly as the construction and extension of its water distributing system would permit, to sell and serve water to the general public coming within the area of such expansion for irrigation, for domestic uses, for mechanical purposes and for whatever other uses such water might be put to by its purchasers, it must be held that substantial evidence of such a carrying into effect of the originally declared purposes of the original appropriators of such water and of the corporation formed by them has been presented as would suffice to justify a finding that the water thus acquired and utilized by such corporation had from its inception been dedicated to a public use and that such corporation was a public utility. The commission had before it such evidence. In the earlier proceedings before

it at which some, at least, of the petitioners herein were present in person or were represented by counsel, the foregoing facts were made fully to appear. Generally they were contained in the recitals or covenants of the various agreements which the San Diego Flume Company made with the predecessors of most of the petitioners herein and out of which their rights as water users arise. As to the law applicable to these facts it may be said to be fairly well settled under the more recent decisions of this court. In the case of *Palermo Land and Water Company* v. *Railroad Commission,* 173 Cal. 380 [160 Pac. 228], the agreements which the Palermo Land and Water Company made with its customers provided that its water was to be supplied "at such rates as may be fixed by law in the district in which said lands are situated"; and this court held that as to those who held under such agreements it appeared that the parties contemplated at the very inception of their contract rights that the rates to be charged should be fixed by public authority; and that the fixing of rates by public authority implies that the service is to be that of a public utility. The evidence before the commission showed that in practically every one of the early contracts for supplying water to the owners of land in the El Cajon Valley there was inserted the clause that the right to take and use the varying amounts of water to be supplied to each of said land owners was to be subject to "legal rates." A large majority of the petitioners herein are the successors in interest of the original land owners who were parties to these contracts. It is true as stated by the petitioners herein that after the board of supervisors of the county of San Diego had, under statutes then in force adopted an ordinance declaring the San Diego Water Company to be a public service corporation and establishing a maximum water rate for its water, the said corporation undertook to call in these earlier contracts and issue new contracts to the land owners holding the same, omitting the clause providing that this water service should be subject to legal rates. This action on the part of the San Diego Flume Company was attempted to be taken six or more years after its organization and after its character as a public service corporation had become practically crystallized by its conduct in selling its water to all sorts of customers over a

widely distributed system.    **[5]**    Having thus dedicated its
water to a public use the company could not revoke such
dedication and convert its waters into a private use without
the consent of all of the beneficiaries of such use.    (*Fran-
scioni* v. *Soledad L. & W. Co.*, 170 Cal. 221–228 [149 Pac.
161]; *Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82–89 [29 L. R. A.
(N. S.) 242, 106 Pac. 404].)

**[6]**    The main question involved in this proceeding, and
which we think affects and concludes all of the petitioners
herein, is the question as to whether or not these petitioners
by their acts and conduct in relation to the numerous pro-
ceedings before the Railroad Commission touching the
water rates of the Cuyamaca Water Company have con-
cluded themselves from asserting in the present proceeding
that the San Diego Flume Company was and that the
Cuyamaca Water Company as its successor in interest is
not a public utility.    The petitioners herein number in
all 116 persons, excluding duplications as where certain
of the petitioners appear as husband and wife, or as mem-
bers of copartnerships.    These persons assert themselves
to be land owners either in the El Cajon Rancho or
the Ex-Mission Rancho.    They are subject to several classi-
fications as to the origin of their land ownerships.    They
are also subject to several classifications as to their ap-
pearances before the commission in the several proceed-
ings instituted before it prior to the proceeding of 1919,
which is assailed herein; as for example certain of said
petitioners appeared or were represented by counsel in the
original proceeding instituted before the commission in
1913 wherein it was expressly held that as to all of its
water users the San Diego Flume Company was from its
inception a public utility.    As to the several proceedings
before the commission prior to 1916, those of the petitioners
herein who did appear therein assert that the orders of the
commission made therein fixing water rates were conditional
upon the making of certain betterments in the distributing
system, which the company did not make and said peti-
tioners therefore argue that they were not bound by the
decision of the commission that the water company was
from its inception a public utility.    This reasoning will
not bear scrutiny.    Having submitted themselves to the
jurisdiction of the commission such of these petitioners so

190 Cal.—6

doing are bound by its conclusion as to the public utility character of the water company. If it failed to comply with the orders of the commission as to betterments the remedy of said petitioners was by appeal to the commission to compel the making of the betterments, but it was not the reassertion of special water rights over which said petitioners had by their acquiescence yielded to the commission the right of control. In 1916 certain of said petitioners appeared as complainants before the Railroad Commission through one D. G. Gordon, asserting himself to represent approximately one hundred persons holding water right contracts along the main flume, in which proceeding doubtless the major portion of the petitioners herein were represented by said Gordon. In said proceeding the Railroad Commission again decided that the San Diego Flume Company was a public utility as was also its successor the Cuyamaca Water Company and thereafter proceeded to order a general readjustment of its water rates, which order occurred on and after March 1, 1917. Still later and in 1918, certain other of the petitioners herein appeared as complainants before the commission in a proceeding entitled, *Robert Ross et al.* v. *Cuyamaca Water Company,* complaining of excessive water rates and seeking affirmative relief from the commission. Coincident with the proceedings initiated by D. G. Gordon in 1916, the Cuyamaca Water Company presented an application before the commission for a general readjustment and regulation of its water rates, in which proceeding a large number, if not all of the petitioners herein appeared as respondents. As to these several proceedings which antedated the final proceeding assailed herein it must be held that as to those of the petitioners herein who actually appeared as respondents in said proceedings, or who affirmatively appeared as complainants therein, they are bound by the several decisions of the commission holding the San Diego Flume Company to have been from its inception a public utility and its successor in interest to be such public utility and hence subject to the jurisdiction and orders of the commission. In holding that those of these petitioners who thus appeared either affirmatively or as respondents and submitted themselves and their several asserted water rights to the jurisdiction of the commission in the several proceedings before it prior to March

1, 1917, we do so, not upon the theory that the decisions of the Railroad Commission are binding upon said petitioners as *res adjudicata*, since we doubt that the decisions of an inferior tribunal rise to the dignity and authority of being *res adjudicata* (*Prentice* v. *Atlantic etc. Co.*, 211 U. S. 210 [53 L. Ed. 150, 29 Sup. Ct. Rep. 67, see, also, Rose's U. S. Notes]), but we do so upon the theory that such of the petitioners herein as thus by their appearance or by their affirmative action submitted their several rights and claims as water users to the jurisdiction of the commission and having done so accepted the rulings of the commission as determinative of their said rights and claims, without seeking to have such rulings reviewed by the courts; and accepted and paid the water rates which the commission established, and put in force upon the theory and finding that the water company as to all of its water users was a public utility, such petitioners cannot now be heard to urge that as to them and their water rights agreements, said water company was and is not a public utility, and as such subject to regulation by the Railroad Commission. The following authorities fully support this conclusion: *Franscioni* v. *Soledad L. & W. Co.*, *supra*; *Allen* v. *Railroad Commission*, 179 Cal. 68–82 [8 A. L. R. 249, 175 Pac. 466]; *Frazee* v. *Railroad Commission*, 185 Cal. 690 [201 Pac. 921]. This being so it becomes important to determine from the record before us if possible the extent to which the petitioners have thus submitted themselves and their water rights and claims to the jurisdiction of the Railroad Commission. While there is considerable doubt and confusion upon this subject as to the earlier proceedings before the commission it would seem to be conceded by the petitioners herein that they all appeared in person or by counsel in the proceedings which were initiated before the Railroad Commission on January 6, 1916, by the Cuyamaca Water Company praying for a general increase in its water rates affecting all consumers and which was decided by the Railroad Commission on January 25, 1917, wherein it was held, after an exhaustive review of the past history and present condition of the water company, that it was a public utility as to all its water users; that certain betterments should be made in its distributing system and that a general system of rates applicable alike to all consumers should be estab-

lished and put into effect from and after March 1, 1917. The record shows that no petition for rehearing was presented upon this decision nor was any writ of review applied for, but that, on the contrary, such general water rates as were thus established were put into effect as to all its consumers by the water company from and after March 1, 1917, and that such water rates were collected from and paid by all of said consumers, including the petitioners herein, for more than two years thereafter and so far as this record discloses are still being collected and paid. It is true that when, in the year 1919, the Cuyamaca Water Company again appeared before the Railroad Commission to apply for another general increase in its water rates, these petitioners responded to said application with their protest against such increase and undertook to reassert the existence and vitality of their several water rights agreements; but we think that at that time they had fully waived their right to stand upon said agreements or to longer claim that as to them the Cuyamaca Water Company was not a public utility and as such fully within the regulatory power of the Railroad Commission as to all of its consumers. This being so the Railroad Commission must be held to have acquired full jurisdiction to make the orders which are sought to be assailed in the present proceeding.

The application for the writ is, therefore, denied.

Shaw, C. J., Waste, J., Lennon J., Wilbur J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices present concurred.