[Civ. No. 20849.   Second Dist., Div. Three.   Sept. 27, 1955.]

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION NO. 389, Appellant, v. BEKINS VAN AND STORAGE COMPANY (a Corporation), Respondent.

John C. Stevenson and Lionel Richman for Appellant.

Hill, Farrer & Burrill, C. M. Gould and Frank D. Mac-Dowell for Respondent.

SHINN, P. J.—Plaintiff labor union brought this action against Bekins Van and Storage Company for declaration of the rights of its members and the duties of the defendant under a collective bargaining agreement.   Bekins demurred

to the complaint upon general and special grounds; its demurrer was sustained without leave to amend and judgment of dismissal was entered. Plaintiff appeals.

The controversy relates to certain rates of pay for defendant's drivers who are members of the union. On April 1, 1949, the union and defendant entered into an agreement covering a two-year period defining the terms and conditions of employment of plaintiff's members. Section 19 was entitled "long line provisions" and specified the rates of compensation for "long line drivers and helpers." On January 10, 1950, the union sent defendant a letter which defendant accepted and which is set out in the margin.[1]

It is conceded by defendant that in all respects in which the terms and conditions stated in the letter differed from those of the agreement, the letter was treated as a modification of the agreement and its terms were complied with by the parties. The letter as modified governed the relations of the parties until on or about June 1, 1954, when a new contract was entered into effective until April 1, 1956.

---

[1] "January 10, 1950

"Mr. Herbert Holt, General Manager
Bekins Van & Storage Company
1335 South Figueroa
Los Angeles 15, California

"Dear Sir:

"In accordance with our conversation of January 6, 1950, the following is our understanding as to the meaning of the provision of Section 19 (c) (7) of the Agreement between your Company and this Union. It is our understanding that in the event a driver is required to lay-over during any round trip, away from his home terminal, he shall be compensated for each such lay-over at the rate specified in Section 19 (c) (7). A driver shall not be entitled to more than one lay-over per calendar day, and in the event any separate lay-over period shall be of more than twenty-four (24) hours' duration, such driver shall be paid at the rate specified for each successive twenty-four (24) hour period or portion thereof so long as such separate lay-over period shall continue.

"In regard to Section 19 (c) (1), this paragraph will also apply to helpers who will receive $1.485 per hour until $11.88 has been paid.

"It is also our understanding that in accordance with our discussion of January 6, 1950, that on all hauls that are covered by Section 19, in which the driver and helper are not required to lay-over overnight or for their rest period, they shall receive the long line rate of pay for their respective classification and shall receive overtime at the rate of time and one-half their regular rate after eight (8) hours on any one turn-around or trip, effective October 15, 1949.

Yours very truly,
C. F. Naccarato
Secretary-Treasurer

CFN:lp
ACCEPTED:
SGND. H. Holt"

Comparison of the provisions of section 21 of the new contract which covered the matters contained in section 19 of the old contract discloses certain dissimilarities. Section 19 reads as set out in the margin.[2] Subdivisions (a), (b)(1), (c)(2), (c)(3), (c)(4) and (c)(6) of section 21 are the same as corresponding provisions of section 19. Each specified rate of pay in the old agreement was changed in the new agreement as follows: $1.585 was changed to $2.10; $1.485 was changed to $2; $12.68 was changed to $16.80; $4.50 was

[2] "Section 19:

| | Per Hour | Overtime |
| --- | --- | --- |
| Drivers ..................... | $1.585 | $2.3775 |
| Drivers' Helpers .......... . | 1.485 | 2.2275 |

"(a): When a long line driver or helper has worked in excess of sixty (60) hours in any calendar week, he shall be paid at the rate of time and one-half for all work performed in excess of sixty (60) hours.

"(b) In addition to the above, following conditions shall apply to long line hauls only:

"(1) It is agreed that any job requiring the driver or crew to be away from home overnight or out of the city after midnight shall be a long line haul, and work on the job shall be paid for at the rate herein mentioned.

"(2) When two men are used on an operation, one man shall be designated as the driver and shall receive not less than $1.585 per hour for all time worked. The second man, or helper shall receive $1.585 per hour for all time spent driving, and for all other time worked shall receive not less than $1.485 per hour. If for any reason it becomes necessary during a trip to designate the helper as the man responsible for the operation of the trip, he shall receive not less than $1.585 per hour for all time worked.

"(c) When drivers and helpers are held away from their home overnight or for their rest period, they shall be compensated on the following basis:

"(1) Sixteen (16) hours after arrival one dollar fifty-eight and one-half cents ($1.585) per hour will be paid until the driver is put to work, but not to exceed twelve dollars and sixty-eight cents ($12.68). The sixteen (16) hour period shall start after the hours paid for have elapsed.

"(2) All drivers and helpers shall be compensated at the regular hourly rate of pay after eight (8) hours of layover time at any shuttle point not located in a city or town with sleeping accommodations.

"(3) That for any and all subsequent work days of twenty-four (24) hours each, the driver shall receive a minimum day's pay of eight (8) hours, or be dead-headed to his home terminal or breaking point.

"(4) All deadheading shall be paid for at one-half the regular hourly rate of pay.

"(5) That where a layover falls on Sundays or National Holidays, the drivers shall be paid four dollars and fifty cents ($4.50) subsistence for such Sunday or National Holidays to consist of New Year's Day, Decoration Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day. Long Line Drivers and Helpers who work at all at the local wage scale during the week in which the holiday occurs shall receive pay for the holidays as provided in Section 8-a of this Agreement.

"(6) All men shall be compensated from the time they are ordered to report for duty at home terminal.

"(7) The sum of four dollars ($4.00) per night shall be paid drivers and helpers when they are away from home terminal."

changed to $5.50; $4 was changed to $5.50. The new agreement added section (c)(1-a) which reads as set out in the margin[3]

The contention of the union is that its letter of January 10, 1950, carried over and became a part of the new contract not by special agreement but as a matter of law. The theory is that the letter agreement was merely an interpretation of certain provisions of section 19 and that the parties having accepted that interpretation are still bound by it notwithstanding the new agreement. Bekins replies that the letter was a modification of the old agreement, became a part of it and expired with the agreement itself. The trial court agreed with this contention and in our opinion made no mistake in arriving at that conclusion.

In its brief the union does not point out any of the particulars in which the compensation of its members as specified in the letter would differ from the compensation specified in the old agreement except in the particulars in which the rate of pay was increased. It merely asserts that the letter agreement as a whole is binding upon the defendant. It does not contend that either the old or the new agreement is ambiguous or in need of interpretation. We shall assume, however, that the letter agreement relates to several conditions under which compliance with its terms would have been of advantage to the union members but we shall mention only one particular in which the letter agreement operated as a modification of the formal agreement. Under the formal agreement a long line driver and helper would receive pay at time and one-half only after having performed work in excess of 60 hours in one calendar week. Under the letter agreement they would receive time and one-half after eight hours on any "one turnaround or trip." The 60-hour provision was clear and definite. The eight-hour provision was new and was clearly a modification and not a mere interpretation. In seeking to read into the new agreement the provisions of the letter, the union declares that the provisions of section 21 are identical with the provisions of section 19 of the old agreement, thus ignoring altogether the differences which we have pointed out.

Not only were the rates of pay substantially increased, but the new agreement provided for additional benefits for the

[3] "(c)(1-a) Sixteen (16) hours after arrival, $2.00 per hour will be paid until the helper is put to work, but not to exceed $16.00. The sixteen (16) hour period shall start after the hours paid for have elapsed."

employees in the nature of "security fund payments." The company agreed to pay up to $10.35 per month into a trust fund for the benefit of its employees and their dependents. No security fund was provided for under the former agreement.

It is clear that in the negotiation of the new contract the parties agreed upon a complete scale of compensation for defendant's employees and that it was in a true sense a new and different contract and not a mere extension of the old one. It was not alleged in the complaint that the modifications of the old contract expressed in the letter were omitted from the new one through inadvertence or mistake or that there was any oral agreement or understanding regarding the same. It must be presumed that the parties had in mind the conditions under which their relations had been carried on for some six years and that the very reason for the new contract was that they wished to discontinue those conditions and to agree upon new ones, and that they meant exactly what they said when they provided that time and one-half would be paid only after an employee had worked 60 hours in one calendar week. So far as alleged in the complaint the increased rates of pay and the security fund benefits were accepted by the union without any demand for additional compensation. The union is seeking a modification of the new agreement by court decree reforming it without the assertion of any facts that would justify the court in decreeing a reformation.

After asserting that sections 21 and 19 are identical the union says in its brief, "The conduct of parties under a former contract which is identical with a subsequent contract is evidence of the intention of the parties under the subsequent contract." (*Rosenberg* v. *George A. Moore & Co.,* 194 Cal. 392 [229 P. 34].) This is substantially the contention which the union took to court. It is the union's case. It is founded upon a false premise. The contracts were not identical nor nearly so; moreover, the conduct of the parties between January, 1950, and June, 1954, was not under the 1949 agreement. It was under the letter modification of that agreement. The code says that the "execution of a contract in writing . . . supersedes all the negotiations or stipulations . . . which preceded or accompanied the execution." (Civ. Code, § 1625.) The present case is governed by this rule of law. (See *Schied* v. *Bodinson Mfg. Co.,* 79 Cal.App.2d 134, 141 [179 P.2d 380]; *First Bond & Mtg. Co.* v. *Malouf,* 37

Cal.App.2d 74 [98 P.2d 824]; 18 Cal.Jur.2d, p. 743.)

█ An action for declaratory relief will not lie when a complaint alleges no facts showing an enforceable contractual right in the plaintiff and only a judgment for defendant can be entered. (*Gillies* v. *La Mesa etc. Irr. Dist.*, 54 Cal. App.2d 756 [129 P.2d 941].)

█ The complaint stated no facts which would have justified granting plaintiff the relief sought, or any relief, and it obviously could not have been amended to state a cause of action for declaratory relief. The demurrer was properly sustained without leave to amend.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 23, 1955. Carter, J., was of the opinion that the petition should be granted.