[Civ. No. 22507. Second Dist., Div. Three. Apr. 9, 1958.]

DYNAMIC INDUSTRIES COMPANY (a Corporation), Appellant, v. CITY OF LONG BEACH, Respondent.

John W. Preston, Jr., and Warner, Peracca & Cowan for Appellant.

Walhfred Jacobson, City Attorney, Joseph B. Lamb, Assistant City Attorney, John B. Nimocks and Leonard Putnam, Deputy City Attorneys, for Respondent.

SHINN, P. J.—The present action is against the City of Long Beach for declaratory relief under a purported oil production agreement. Plaintiff Dynamic Industries appeals from a judgment based upon an order sustaining, without leave to amend, a general demurrer to its amended complaint, hereinafter referred to as the complaint. The facts alleged therein

are as follows: By a statute enacted in 1911 and amended in 1925 and 1935, the State of California granted to defendant all the tidelands and submerged lands located within the municipal boundaries, subject to a public trust for the improvement of commerce, navigation and fisheries. At all times thereafter, defendant has been the owner in fee simple of its tidelands and submerged lands in trust for the purposes named in the statutes and the city has had the authority to lease said lands and to enter into contracts for the recovery of oil, gas and other hydrocarbons therefrom.

The complaint alleges that on June 9, 1941, plaintiff made a written offer to the city to recover the oil and gas from its tidelands over a period of 35 years; the offer was submitted in the form of a detailed agreement under which the company was to be engaged by defendant as an independent contractor. Upon communication of the offer to the city council, a resolution was adopted authorizing the employment of two independent consultants in geology and petroleum engineering to examine the proposal; their compensation, amounting to $1,200, was paid by the company at defendant's request. The report of the consultants was favorable and the council directed the municipal authorities to negotiate with plaintiff, using the offer as a basis. After conferring with representatives of the company, defendant's city attorney and city manager agreed upon the terms of a draft contract which the latter submitted to the council on March 16, 1942, with his recommendation that it be approved. The draft was verbally identical to the offer of the preceding June; each paragraph was typed on a separate sheet of paper to facilitate revision and many of the pages were left partially blank. An unexecuted copy, with space for the signatures of plaintiff's president and defendant's city manager, is attached to the complaint as an exhibit. The draft was read at a regular meeting of the Long Beach City Council held March 17th, and approved, paragraph by paragraph, as so read. The council adopted a resolution which reads in part: "Now, THEREFORE, BE IT RESOLVED that the City of Long Beach accept said proposal and the City Attorney be, and he is hereby authorized and directed to prepare a proper form of contract conforming to the plan and methods proposed by Dynamic Industries Company for the development of said submerged lands. The City Attorney is further authorized and directed to prepare said contract and submit the same to the City Council as soon as possible after this adoption date of this resolution."

Plaintiff alleges that "the directive given to the City Attorney, as set forth in the last quoted language, meant only that the City Attorney was required to have said contract re-typed so that there would be no blank spaces or parts of pages therein . . . the City Attorney was not thereby authorized to make any changes in the wording of said contract."

It is next alleged that the city attorney attempted to settle the exact boundaries of the lands to be developed under the contract, which he was directed to do by the city council. The city attorney reported to the council from time to time, and as late as August 1945, that he had been unable to solve the boundary questions submitted to him in 1942. And, in October 1945, the United States brought an original suit against the State of California in the Supreme Court of the United States, claiming paramount title to all tidelands underlying the state's Pacific boundaries. That action was determined in favor of the United States in 1947. In 1950, Congress enacted the so-called "Submerged Lands Act," whereby the United States relinquished to the several states the ownership of their respective tidelands and submerged lands. One section of the statute provides: "The rights, powers, and titles hereby recognized, confirmed, established, and vested in and assigned to the respective States and their grantees are subject to each lease executed by a State, or its grantee, which was in force and effect on June 5, 1950, in accordance with its terms and provisions and the laws of the State issuing, or whose grantee issued, such lease. . . ." (43 U.S.C.A. § 1311(c).) The constitutionality of the act was challenged by the States of Alabama and Rhode Island and was upheld by the Supreme Court on April 26, 1954.

It is further alleged that defendant could not place the company in possession of its tidelands and submerged lands, as provided by the contract, until April 26, 1954, and that the company could not begin its drilling operations until that date, although it has been ready, willing and able to do so at all times since March 17, 1942. However, in reliance upon the council's resolution, plaintiff incurred and paid liabilities in the amount of $9,125 which, it alleges, were "incident and necessary to the performance of its duties and obligations in relation to the contract."

There follow allegations as to an actual controversy between the parties, to wit, that plaintiff claims it entered into a binding agreement with defendant, which defendant denies. The

prayer is for a declaration that the alleged contract is valid and subsisting and that the city is obligated to place Dynamic Industries in possession of its tidelands and submerged lands so that it may construct its facilities and proceed with drilling operations pursuant to its contract.

The question for decision is whether the complaint states a cause of action on any theory.

In urging a reversal of the judgment, plaintiff contends that the city council accepted its offer by adopting the resolution of March 17, 1942, and that the offer and acceptance created a binding agreement. Defendant contends, on the other hand, that the proposed contract was never signed by the city manager, as its charter requires, hence the action taken by the council was not binding upon the city. We agree with defendant's contention.

Under Article XI, Section 6 of the California Constitution, as amended in 1914, chartered cities are empowered ''to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws.''

Long Beach is a chartered city. Section 293 of its charter provides, in material part, as follows: ''The City of Long Beach shall not be and is not bound by any contract, except as otherwise provided herein, unless the same is made in writing, by order of the city council, and signed by the city manager or by some person in behalf of the city authorized so to do by the city manager; provided, that the approval of the form of the contract by the city attorney shall be endorsed thereon before the same shall be signed on behalf of the City. . . .''

An exception is provided in section 294, which empowers the city manager, upon the submission of bids, to enter into contracts on behalf of the city or one of its departments with the lowest responsible bidder; where actual emergency work is required, the city council may authorize him, by majority vote, to enter into contracts for labor and materials either orally or in writing. It is not claimed that this exception applies to the present case.

The contract whose validity plaintiff seeks to establish was not signed by the city manager, as the charter requires. It could not have been signed since the area to be included was never defined nor approved by the city attorney or the council.　It is well settled that when a municipal charter

contains an express limitation upon the mode in which the city may contract, the city is bound only by contracts executed in accordance with the charter provisions; in other words, where the statute provides the only mode by which the power to contract shall be exercised, the mode is the measure of the power. (*Reams* v. *Cooley*, 171 Cal. 150 [152 P. 293, Ann.Cas. 1917A 1260]; *Times Publishing Co.* v. *Weatherby*, 139 Cal. 618 [73 P. 465].) The rule applies equally to contracts made by the city in a governmental or a proprietary function. (*City of Pasadena* v. *Estrin*, 212 Cal. 231 [298 P. 14].) When the charter provision has not been complied with, the city may not be held liable in quasi contract, and it will not be estopped to deny the validity of the contract. (*Reams* v. *Cooley, supra,* 171 Cal. 150, 153; *Los Angeles Dredging Co.* v. *Long Beach,* 210 Cal. 348, 353 [291 P. 839, 71 A.L.R. 161].)

 Plaintiff makes the point that the city may enforce its own regulations only as to municipal affairs, and that the ownership of tidelands under a trust for the benefit of the people of the state is not a municipal affair, citing *Mallon* v. *City of Long Beach,* 44 Cal.2d 199 [282 P.2d 481]. Therefore, it is argued, defendant's power to contract with respect to its tidelands is to be measured by the general law of contracts as enforced in the state, under which the council resolution was effective as an acceptance of plaintiff's offer. The argument cannot be maintained.

Defendant's charter does not distinglish between contracts made by the city in the ordinary course of business and contracts made by it as trustee. Whatever the subject matter of a municipal contract, it is manifest that the mode in which a city chooses to contract is a municipal affair, and we see no basis for reading into section 293 an implied exception, or for disregarding its prohibitory language.

 The fact that plaintiff expended a substantial sum in reliance upon the 1942 resolution is immaterial in view of the charter limitation. As Chief Justice Field said in *Zottman* v. *San Francisco,* 20 Cal. 96, at pages 104-105 [81 Am.Dec. 96], quoting from a New York decision: "It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere

volunteer, and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard.''

■ Plaintiff contends that the complaint stated grounds for a declaration of its rights. But the general allegations are controlled by the specific facts alleged as the basis of the rights sought to be established. ■ An action for declaratory relief does not lie when a complaint alleges no facts showing an enforcible contractual right in the plaintiff and only a judgment for the defendant can be entered. (*International etc. Teamsters* v. *Bekins etc. Co.*, 135 Cal.App.2d 692, 697 [288 P.2d 181] ; *Gillies* v. *La Mesa etc. Irr. Dist.*, 54 Cal. App.2d 756 [129 P.2d 941].) ■ Those facts would not have justified granting Dynamic Industries the relief sought, or any relief, and the complaint clearly could not have been further amended to state a cause of action for declaratory relief.

The demurrer was properly sustained without leave to amend.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied April 28, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 4, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.