[Civ. No. 6476. First Appellate District, Division One.—February 16, 1929.]

HAYDEN PLAN COMPANY (a Corporation), Appellant, v. J. M. FRIEDLANDER, etc., Respondent.

Kimball Fletcher for Appellant.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and Neil Cunningham, Deputy Attorney-General, for Respondent.

PARKER, J., *pro tem.*—This is a proceeding commenced in the superior court asking a review of the action of the Corporation Commissioner in denying plaintiff's application for a permit to issue securities within the state of California. The court below issued its order directing that the proceedings be brought before it for review, and, after a hearing, the said court made and entered its judgment dismissing the writ of review and affirming the action of defendant Corporation Commissioner. Plaintiff prosecutes the appeal. The

record before the court below and the record before us consists of the petition for review, the application for a permit and the order of the Corporation Commissioner denying the said application and refusing the permit sought. The proceeding is novel. The petitioner contends at the outset that it does not issue, nor does it intend to issue, securities within the meaning of the Corporate Securities Act. That, although its business does not fall within the scope of the Corporate Securities Act, plaintiff filed an application for a permit to issue securities. If this is true, then the Corporation Commissioner was not authorized to issue the permit sought. The plaintiff argues in the appeal, to the same effect as in the court below, that as a matter of law the Corporation Commissioner has no power either to grant the permit or to refuse it. The theory seems to be that while the plaintiff does not require any permit authorizing it to issue the securities or certificates in question, nevertheless it fears that if it has no permit, and proceeds with the business in hand, the Corporation Commissioner will cause the officers and agents of the plaintiff corporation to be prosecuted for violation of the Corporate Securities Act.

In other words, though the pleadings are not so framed, the plaintiff seeks, in a measure, declaratory relief. Plainly, he asks the courts to determine, in the first instance, whether or not the securities it desires to issue are such as bring them within the scope of the Corporate Securities Act. We decline to take up the question. There is nothing of particular public interest involved. There is nothing before us to show that there is any actual or other dispute concerning the character of the securities for the issuance of which a permit is sought, nor is there any showing of interference by any person or agency of the state. The plaintiff corporation voluntarily submitted the application to the Corporation Commissioner, and that officer refused to issue the permit as applied for, or otherwise or at all. It would be a rather novel situation if every person who might devise a scheme to secure money from the public would first go to the courts and, under guise of declaratory relief, pass up to the courts the duty of analyzing each proposal or scheme and pointing out those which might come under the supervision of the Corporation Commissioner and those that would not. Therefore, we hold that the only question

before us on this appeal is in the action of the Corporation Commissioner. Plaintiff applied for a permit to make contracts and issue certificates in the forms and denominations set out at length and appended to the application. The nature of the corporation's business and the plan of its operation are fully set out in the case of *Hayden Plan Co.* v. *Wood, ante,* p. 1 [275 Pac. 248]. In the case of *Doble Steam Motors Corp.* v. *Daugherty,* 195 Cal. 165 [232 Pac. 140], the court says: "It seems to us manifest from the provisions of the Corporate Securities Act that discretion is reposed in the Commissioner to grant or to deny a permit to a corporation to issue and sell any particular portion of its capital stock whenever upon the face of the application for such permit a state of facts is disclosed concerning which, taking them to be true as alleged in said application, there is room for a reasonable difference of opinion as to whether the proposed plan of the applicant for the issuance of its securities and the proposed methods to be used by it in issuing or disposing of them will be fair or unfair, just or unjust, equitable or inequitable; and as to whether their issuance and disposition upon the proposed plan of business of the applicant will or will not work a fraud upon the purchase of such securities." In the case at bar, without attempting any final characterization of the scheme or plan of plaintiff, we conclude that there was ample room for a reasonable difference of opinion in the matter set forth in the cited case. The application was to issue certificates or securities, so called, in the amount of one million dollars. These certificates really represented nothing other than a receipt for money paid. The purchaser of the certificates has no right or power to inquire into the affairs of the corporation as a shareholder therein. The certificate was not negotiable or transferable without consent of the corporation. The corporation was a foreign corporation and the scope of its activities was unlimited. It had no capital, other than a small amount of cash, and its balance sheet showed a large promotion expense, almost entirely dissipating the investment of those who had theretofore entered the scheme in other states. The investor had no means of surrendering up his certificate and securing the return of his principal or any portion thereof. No limit was placed upon the expense of management, and an elaborate, arbitrary, and com-

plex system of investment and re-investment was provided for. The funds obtained by the corporation could be invested in any state of the Union and the property of the corporation or its assets would thus be under many jurisdictions and removed from the control of local authority. In the application to the commissioner this statement appears: "So far as the corporation is advised, the plan of financing upon a large scale is utterly new, as is the use in that connection of the special power of attorney, and to protect the plan from too close imitation the text and design of the certificate have been copyrighted." Conceding this, the plan was untried and purely experimental; it was an innovation in modern financing. That fact alone would warrant a close scrutiny, and could be and doubtless was considered by the commissioner in determining his action. ■ The Corporate Securities Act was enacted for the purpose of protecting the general public, not only against fraudulent or unlawful stock schemes or enterprises, but likewise to give to the state authority to regulate and control the class and character of securities or investments that might be offered to the public for purchase. All of the funds derived from the sale of these certificates were to be entrusted to directors not selected by the investors and in nowise subject to their control and beyond the power of the investors to remove. Whatever else may be stated concerning the corporation or its plan, it did furnish a wonderful opportunity for the perpetration of fraud and dishonesty, with little opportunity of regulation or redress. We cannot say that the Commissioner of Corporations acted beyond the limits of a sound discretion.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 15, 1929.

All the Justices concurred.