[Civ. No. 13321. Second Dist., Div. Two. Dec. 29, 1941.]

E. A. MONAHAN et al., Appellants, v. DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES et al., Respondents.

748

Gallagher, Wirin & Johnson and Fred Okrand for Appellants.

Ray L. Chesebro, City Attorney, S. B. Robinson, Chief Assistant City Attorney, Leon T. David and Gilmore Tillman, Assistants City Attorney, and George W. Adams and A. H. Driscoll, Deputies City Attorney, for Respondents.

HANSON, J. pro tem.—In this action for declaratory relief the plaintiffs, who under civil service rules are classified as "journeymen linemen" and are employed by the Department of Water and Power of the City of Los Angeles, allege in their complaint that they are entitled to receive the same pay, i. e., $225 per month, as is paid to those journeymen linemen whom the department designates and details as "troublemen," because, so they allege, they perform duties that are similar to and identical with the duties performed by the latter. As a basis for their alleged cause of action they aver with resounding epithets that the reason they have not been designated as troublemen or favored with the pay of troublemen is due to the "whim, caprice and favoritism" of the defendants, in whom the appointing power is vested, and not on any basis of seniority or ability. The trial court sustained a general demurrer to the complaint without leave to amend. Hence this appeal.

The record does not disclose whether the trial court sustained the general demurrer on the ground (1) that the court was without jurisdiction to grant the relief prayed on the facts alleged, or (2) that the essential allegations were set forth by way of conclusions rather than by ultimate facts. As we are of the opinion that its decision was correct on either ground we shall discuss both grounds, even though a discussion of one would suffice.

The complaint, so far as is here material, alleged that the Department of Water and Power of the City of Los Angeles, by resolution adopted by its commissioners, fixed the wage of "journeymen linemen" at from $195 to $225 per month; that such linemen are within the competitive classified civil service of the city; that the plaintiffs are all employed by the department as journeymen linemen, having after competitive examination been duly certified by the Civil Service Commission; that each plaintiff is now receiving $195 per month; that the commissioners of the department have wrongfully and without authority of law set up a false classification of journeymen linemen which is designated as "troublemen," each of whom is paid a wage of $225 per month; that the troublemen perform duties that are similar and identical to and with the duties performed by the plaintiffs as journeymen linemen; that the troublemen are not selected by the commissioners of the department on any basis of seniority or ability to perform the duties of a journeyman lineman [troubleman?] but on the basis of whim, caprice and favoritism which evades the law and the intent and purpose of the civil service provisions of the charter of the city; that as a result the plaintiffs are forever doomed to receive the minimum beginner's salary of $195 per month. After setting forth certain provisions of the charter, plaintiffs allege that certain specific controversies exist between the plaintiffs and defendants, and they then proceed to set forth the contentions they make as well as those they allege the defendants make, with a prayer for a declaration, among other things, that it be determined they are entitled to receive $225 per month.

At the outset it may be noted that this is not an action seeking to have the wage scale of troublemen reduced to that of the journeymen linemen because the work of each is the same but to lift the wage of the journeyman to the level of the troublemen. This involves nothing that is new or even

dastardly. It merely implies that the troublemen are entirely capable and the journeymen equally so, but that the nod which has made one a troubleman and kept the other a journeyman was, in the view of appellants, the result of "nepotism, politics, whim or caprice." This claim has a familiar ring, if not to all then at least to business executives who are entrusted with the power to promote persons to responsible positions over their fellows. But the claim as made is significant in another aspect, and that is its bearing upon the jurisdiction of the court to entertain the cause of action which the complaint attempts to state. The complaint invokes the jurisdiction of the court to declare by its judgment, not that troublemen shall receive no more pay than journeymen, but that journeymen must be ranked with troublemen and be paid the wage which the latter now receive.

■ The initial contention of the plaintiffs which requires consideration is the claim that their controversy with the defendants was not only one within the jurisdiction of the court but that it set forth a right in the plaintiffs, and a corresponding duty on the part of the defendants, which should have been entertained and adjudicated by the court. In taking this position we must necessarily assume that the plaintiffs are of the opinion that if a right and duty are shown the trial court has no discretion except to entertain the action. Such is not the law; and, what is more, our right of review is so limited that we may reverse only if it affirmatively appears that the court below abused its discretion. Appellants here argue, and cite cases which they contend sustain their claim, that the court below had jurisdiction to entertain and adjudicate upon the controversy; but they neither argue nor cite cases to the all-controlling point whether the court abused its discretion.

■ Our statute (Code Civ. Proc, sec. 1060) authorizes a superior court to make a binding declaration, with the force of a final judgment, in cases of actual controversy relating to the legal rights and duties of the respective parties to the action. But the statute expressly provides that the court may refuse to exercise the power where it concludes its declaration or determination is not necessary or proper at the time and under all the circumstances. (Code Civ. Proc., sec. 1061.) Accordingly under the statute litigants are not vested with an absolute right to a determination of an actual controversy existing between them with respect to their rights and

duties growing out of it. Moreover, if the determination is refused they are not entitled to a review unless they show affirmatively that the court abused its discretion. (*City of Alturas* v. *Gloster*, 16 Cal. (2d) 46 [104 Pac. (2d) 810].) ██ In the instant case no such showing is made. ██ In that connection we may well observe that not only must the controversy be a justiciable controversy, as distinguished from "a difference or dispute of a hypothetical or abstract character; from one that is academic or moot," but it must be "definite and concrete, touching the legal relations of the parties having adverse legal interests." (*Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227 [57 Sup. Ct. 461, 81 L. Ed. 617, 108 A. L. R. 1000].) In short, the controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, and not suggest, what the parties may or may not do. ██ While ordinances and statutes are inherently proper subjects of declaratory relief, yet a declaratory judgment may not be rendered in respect to them in disregard of the customary limitations upon the granting of such relief.

██ Applying these principles here, it will be noted that the judgment sought is one essentially of specific performance. The court is asked to decree that hereafter the department must pay each of the plaintiffs $225 per month, and that it cease and desist from its alleged practice of designating troublemen except upon the basis of seniority and ability. There is no such power in the court—and wisely there is none. We lay further discussion of the subject to one side and pass to a consideration of the provisions of the Charter of the City of Los Angeles, which is here controlling as to the rights and duties of the parties and which to our mind additionally sustains the decision below.

██ The Charter of the City of Los Angeles provides that its Board of Civil Service Commissioners shall classify the various positions or jobs in the city service so those that are sufficiently similar in respect to the duties and responsibilities shall be in one class. The commission has established as one of the classes that of journeymen linemen. The complaint, to which the Civil Service Commission is a party defendant, does not charge that it should have set up ranks within the class of journeymen linemen such as journeymen

and troublemen. Indeed, the charge could not well be made in view of appellants' claim that the duties and responsibilities of all linemen are for all purposes identical and similar. At the time plaintiffs took and passed a competitive examination for journeymen linemen the Department of Public Works, according to the complaint, had set the pay for the class to range between $195 and $225 per month. It is not, and indeed it could not be contended, in view of the terms of the charter, that the department did not possess the authority and power to fix wages or salaries of its employees This for the reason that the charter imposes upon the department the duty to create the necessary positions in the department and to fix the salaries and duties of every employee thereof. Under that provision of the charter it is clear (except for applicable civil service rules, of which there are none) that the department might establish positions by rank, grade or otherwise, even though such positions were all within one class as determined by the Civil Service Commission. The latter's duty was to classify generally, and not specifically; and it had no authority to set the wage. No provision of the charter restricts the department in its appointive power, except that it must choose linemen from the list certified by the Civil Service Commission. As the charter, as plaintiffs concede, makes no provision requiring that ability or seniority should be taken into account, the department necessarily may designate from its personnel of journeymen linemen those it chooses as troublemen, without let or hindrance from anyone. So far as the charter is concerned, the department may designate a journeyman lineman as troubleman, with the higher pay which goes with that designation.

Section 123 of the charter is quoted by appellants, but for what purpose is not clear. All that the section provides is that the Salary Standardization Committee shall from time to time grade and regrade salaries of those in the classified civil service so that "like salaries shall be paid for like duties." The committee has no power of enforcing its conclusions. All it can do after it has come to a conclusion is to recommend to the proper authorities the salary or wage for each class of positions in strict accord with the classification set up by the Civil Service Commissioners. In the instant case the commissioners set up a single classification—that of *linemen.* It did not designate, because it could not, the salary or wage to be paid to linemen. It might have classified line-

men into the two existing designations of journeymen and troublemen, but it did not. No claim is here made that it should have done so. The Salary Standardization Committee could have recommended to the defendant department that journeymen and troublemen should receive the same pay; that the pay be $225 or $195, or in between. But even so, it could not enforce its views, as the charter grants the authority and the discretion to the department. The complaint does not allege that the department has promulgated any rules in favor of its employee linemen except that their compensation shall be somewhere between $195 and $225 per month. Unless there are controlling rules it seems evident that the department at any time may revoke a person's designation as troubleman and reduce his pay to $195. They are confirmed by civil service rules in their classification as linemen, and in no others. (*People* ex rel. *O'Connor* v. *Girvin,* 227 N. Y. 392 [125 N. E. 587], *per Cardozo, J.*)

Accordingly, then, as under the charter the department may rank or grade linemen as journeymen linemen or troublemen, and may vary the pay as to each even though the work is the same or substantially so, we may not inquire into the motives that affect the commissioners in their selection. Executive heads in the fields of government, as in the fields of commerce, must have a certain amount of discretion if they are to function. (Cf. *State* ex rel. *Reilley* v. *Civil Service Commission,* 8 Wn. (2d) 498, 112 Pac. (2d) 987, 134 A. L. R. 1100].) For the court to accord relief here would not only be to put governmental executives in a straitjacket, but would involve an altogether too complacent an attribute of superiority in the court in the handling of administrative details which have not been entrusted to them but to the executives on the job. Courts should not and will not assume to control or guide the exercise of their authority. If relief be needed it should not be sought in the courts but with the body that has the authority.

Quite apart from the considerations we have expressed in support of the ruling below, we are of the opinion that the demurrer was rightly sustained for still another reason. The essential charging allegations of the complaint are stated by way of conclusion and not by way of ultimate fact. The charge is that the defendants "have wrongfully and without authority of law adopted, established and set up an artificial and false classification of journeymen linemen

known, termed and designated by said defendants as 'troublemen.' That journeymen linemen so designated are paid a salary of $225 a month and perform duties that are similar and identical to and with the duties performed by plaintiffs as journeymen linemen; that said 'troublemen' are not chosen or selected . . . on the basis of seniority or ability . . . but on a basis of whim, caprice and favoritism.'' Except for the statement that troublemen are paid $225 a month, the entire quoted statement represents nothing but the pleader's conclusion as to the facts. (*Going* v. *Dinwiddie,* 86 Cal. 633 [25 Pac. 129] ; *Ohm* v. *San Francisco,* 92 Cal. 437 [28 Pac. 580] ; *Callahan* v. *Broderick,* 124 Cal. 80 [56 Pac. 782] ; *Aurrecoechea* v. *Sinclair,* 60 Cal. 532; *Filarski* v. *Covey,* 75 Cal. App. 353 [242 Pac. 874] ; *Bailes* v. *Keck,* 200 Cal. 697 [254 Pac. 573, 51 A. L. R. 930] ; *City of Alturas* v. *Gloster,* 16 Cal. (2d) 46 [104 Pac. (2d) 810] ; *Pierce Oil Corp.* v. *Hope,* 248 U. S. 498 [39 Sup. Ct. 172, 63 L. Ed. 381, 382] [Holmes, J.] ; *Pennie* v. *Reis,* 132 U. S. 464 [10 Sup. Ct. 149, 33 L. Ed. 426, 428, 429] ; cf. 119 A. L. R. 1000.) It was necessary that the facts should have been pleaded so the court might see from the facts stated that there was discrimination as claimed. This was doubly important here, as plaintiffs not only conceded but alleged that the *defendants contended* that the duties of troublemen were not similar or identical to those of journeymen linemen, and that the higher pay of troublemen was occasioned by their additional responsibilities and their peculiar personal qualifications for the work.

The allegation that troublemen were appointed because of "whim, caprice and favoritism" is nothing but an allegation of motive; and as the standards of the law are external, motives are not actionable. Where there is a legal right to do a certain act, the motive which induces the exercise of the right is of no importance. (1 C. J. p. 962.) As no claim is made by the plaintiffs that the troublemen are not equally as capable as any of the other journeymen linemen, the concession accordingly admits that the appointments were proper but were based upon wrong motives, and in that situation the correctness of the appointment cancels out the wrongfulness of the motive. We need cite but a case or two.

In *Isbrandtsen-Moller Co.* v. *United States,* 300 U. S. 139 [57 Sup. Ct. 407, 81 L. Ed. 562], the complaint alleged that an order issued by the Secretary of Commerce requiring the

plaintiff to file its rates for transportation of various commodities to various points in foreign countries was made at the instance of a member of the Shipping Board who was an active competitor of plaintiff, and for the purpose of forcing plaintiff to join a conference or shipping monopoly. In denying relief the court said: ''Aside from the principle that if the order is justified by a lawful purpose it is not rendered illegal by some other motive in the mind of the officer issuing it, the allegations of the complaint are mere conclusions unsupported by any facts pleaded and are, therefore, insufficient.''

In *Dakota Central etc.* v. *State etc.* ex rel. *Payne,* 250 U. S. 163 [39 Sup. Ct. 507, 63 L. Ed. 910], the plaintiff sought to enjoin the Postmaster General from putting into effect certain telephone rates. The complaint assailed the motives of the Postmaster General which it was claimed induced the exercise of the power. To that contention Chief Justice White said: ''But as the contention at best concerns not a want of power, but a mere excess or abuse of discretion in exerting a power given, it is clear that it involves considerations which are beyond the reach of judicial power. This must be since, as this court has often pointed out, the judicial power may not invade the legislative or executive departments so as to correct alleged mistakes or wrongs arising from asserted abuse of discretion.''

The cases cited by both appellants and respondents, with one exception are not in point, and for that reason we have no occasion to discuss them. The one exception, which is here pertinent, is a decision of our supreme court in *Banks* v. *Civil Service Commission,* 10 Cal. (2d) 435 [74 Pac. (2d) 741], from which we quote as follows: ''Plaintiffs complain that there are some fifty-eight other jailers serving the City and County of San Francisco, all of whom receive a salary of $197 per month, and only the four plaintiffs are limited to a salary of $170 per month. Apparently this is an inequality of which the plaintiffs may well complain, but the power to fix salaries of persons holding positions like or similar to those held by plaintiffs has been lodged by the charter in the Board of Supervisors. Plaintiffs' remedy lies not with the courts but with the authority upon whom the charter has imposed the duty of fixing the salaries of its officers.''

The demurrer was rightly sustained and the judgment is affirmed.

Wood, (W. J.) Acting P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 26, 1942.