[Civ. No. 2873.   Fourth Dist.   Oct. 6, 1942.]

F. A. GRAHAM GILLIES et al., Appellants, v. LA MESA, LEMON GROVE AND SPRING VALLEY IRRIGATION DISTRICT et al., Respondents.

Ward & Ward and Jesse George for Appellants.

W. H. Jennings for Respondents.

MARKS, J.—This is an action for an injunction, declaratory relief and damages for breach of contract. A demurrer to the complaint was sustained without leave to amend. This is an appeal taken from the judgment.

Plaintiffs are owners of land riparian to the San Diego River. The La Mesa, Lemon Grove and Spring Valley Irrigation District (hereinafter called the district) is an irrigation district organized under the California Irrigation District Act, approved March 31, 1897, as amended. [Stats. 1897, p. 254; Deering's Gen. Laws, 1937, Act. 3854.] The individual defendants are the directors of the district.

The complaint contains three counts. The first count seeks a mandatory injunction requiring the district to furnish and deliver to plaintiffs, on their lands, three miner's inches of water at an annual price and charge of $60 for each miner's inch. The second cause of action seeks damages for violation of contract to furnish and deliver the water at that price. The third cause of action is for declaratory relief. The allegations of the first cause of action are incorporated in the other causes of action by reference. We will therefore examine the allegations of the first cause of action in some detail.

It is alleged that F. A. Graham Gillies and J. T. Gillies (hereinafter referred to as Gillies Brothers) owned described land in El Cajon Valley in San Diego County; that Fred N. Patterson also owned described land in the same valley; that both tracts of land are outside of the boundaries of the district.

That there is attached and is appurtenant to the lands of Gillies Brothers two inches continuous flow of the waters of the San Diego River, and to the lands of Patterson one inch of that flow; that the district is obligated by contract to transport that water to the lands of plaintiffs for the consideration already mentioned.

That the San Diego River is an unnavigable stream about fifty-five miles long from its source to its mouth at the Pacific Ocean; that the city by reason of succession has the prior right to the flow of the river necessary for its municipal purposes; that if the waters of the river are properly developed, impounded and conserved the average annual flow of the river is "far in excess of the amount of water necessary to meet the present and reasonably future demands and needs of the said city of San Diego."

It is alleged that plaintiffs' water rights found their source in W. E. Robinson and his associates who, in 1885, filed on and appropriated approximately 21,000 miner's inches of the flow of the San Diego River, to be used on approximately 25,000 acres of the El Cajon Rancho in the El Cajon Valley; that in the same year Robinson and his associates entered into a contract with Henry B. Lockwood and his associates (the parties being the owners of the greater part of the 25,000 acres already mentioned and also the lands of the Ex Mission Rancho) whereby Robinson and his associates bound themselves to the other land owners to build, construct and operate in perpetuity the necessary dams, aque-

ducts and pipe lines to impound the waters and bring them on the lands in El Cajon Valley, including the lands of plaintiffs; that this contract was duly recorded; that the parties to that contract organized the San Diego Flume Company (hereafter called the Flume Company); that in 1886, Robinson and his associates assigned their rights to the Flume Company which assumed their obligations under the contract; that in 1889, the Flume Company completed and put into operation a system capable of delivering to the lands in El Cajon Valley, including the lands of plaintiffs, 5,000 miner's inches of water; that the Flume Company sold and conveyed to the owners of land in the El Cajon Valley and Ex Mission Rancho, including the predecessors in ownership of plaintiffs, various specified quantities of water which were attached to and made appurtenant to the various described parcels of land and which were to be delivered on those lands for the price of $60 per inch per year, payable in semi-annual instalments of $30 each; that this contract was duly recorded; that plaintiffs' water rights passed to them by mesne conveyance under this contract; that in 1910 the Flume Company sold all of its rights to James A. Murray and his associates, co-partners doing business under the name of Cuyamaca Water Company, who assumed the obligations of the Flume Company under its contract; that in June, 1925, the Railroad Commission of the state authorized the Cuyamaca Water Company to sell the water system and plant and the major portion of its utility properties to the district upon the condition that the district would continue to serve an adequate supply of water in quantities to which they were entitled at the date of sale, to consumers of the Cuyamaca Water Company, whose properties were outside of the boundaries of the district; that conveyances were made upon the conditions imposed by the Railroad Commission; that the district has recognized its obligation to furnish water to plaintiffs but has refused to furnish water in the amounts and at the rates provided in the contract of the Flume Company to the irreparable damage of the plaintiffs.

It is also alleged that the Cuyamaca Water Company, shortly after its purchase from the Flume Company, became a public utility subject to the jurisdiction of the Railroad Commission, which assumed jurisdiction over it and fixed rates and charges higher than those established in the contract of the property owners with the Flume Company

"against the protest and objection of the said Fred N. Patterson and the predecessors in ownership of Gillies Brothers, plaintiffs herein."

In addition to the foregoing allegations, damages to Gillies Brothers in the sum of $52,000 and to Fred N. Patterson in the sum of $14,000 are alleged in the second cause of action, the damages being predicated on the breach of the Flume Company contract.

The third cause of action seeks declaratory relief in the controversy over the alleged obligations contained in the Flume Company contract.

A more complete statement of the facts, and reference to various proceedings before the Railroad Commission, may be found in the case of *Brewer* v. *Railroad Commission*, 190 Cal. 60 [210 Pac. 511], involving the same contract that is now before us.

It is clear that the principal question for decision is this: The plaintiffs having alleged in their complaint that the Cuyamaca Water Company was a public utility under the rate fixing jurisdiction of the Railroad Commission, which assumed jurisdiction and fixed rates in excess of those specified in the Flume Company contract against the protest and objection of Patterson and the predecessors in interest of Gillies Brothers, and the district having succeeded to the interest of the Flume Company under the jurisdiction of the Railroad Commission, can the plaintiffs rely on the provisions of the Flume Company contract as against the higher rates established by the Railroad Commission?

This very question was answered in the negative in *Brewer* v. *Railroad Commission*, 190 Cal. 60 [210 Pac. 511], and 190 Cal. 85 [210 Pac. 521]. The plaintiffs or their predecessors in interest may not have been parties to the Brewer case, still they have alleged that the Cuyamaca Water Company, the predecessor of the district, was a public utility under the jurisdiction of the Railroad Commission which fixed rates in derogation of those fixed in the Flume Company contract over their protest and objection or the protest and objection of their predecessors in interest. These allegations bring the case within the principle upon which the decision in *Brewer* v. *Railroad Commission, supra,* is based, and plaintiffs may not now rely upon the Flume Company contract as against the higher rates fixed and established by the order of the Railroad Commission. They cannot attack the formal order of the commission in this manner in the superior court.

A case factually similar to the instant case is *Wallace Ranch Water Co.* v. *Foothill District Co.*, 5 Cal. (2d) 103 [53 P. (2d) 929]. There the plaintiff had a contract for conveyance of its waters through the system owned and operated by the defendant, a public utility, at a price much less than the rates subsequently fixed by the commission. In holding that the plaintiff could not attempt, in an action in the superior court, to enforce the provisions of its contract as against the rates established by the commission, the Supreme Court said:

"Assuming that the plaintiff is correct and that this court cannot take judicial notice of the 1929 order above referred to, it still affirmatively appears from the record that the commission, with full knowledge of the claimed rights of plaintiff, has made at least two orders fixing rates for the service rendered plaintiff by defendant. It does not appear that these orders are void on the face thereof. Under such circumstances, the trial court had no jurisdiction directly or indirectly to overrule an order of the Railroad Commission. The power to reverse, review, correct or annul orders of that commission rests solely in the Supreme Court (§ 67 of the Public Utilities Act, *supra*) and the superior court is without jurisdiction in the premises. (*Pacific Tel. & Tel. Co.* v. *Eschelman*, 166 Cal. 640 [137 Pac. 1119, Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652]; *Truck Owners etc., Inc.* v. *Superior Court*, 194 Cal. 146 [228 Pac. 19]; *Allen* v. *Railroad Commission*, 179 Cal. 68 [175 Pac. 466, 8 A. L. R. 249]; *People* v. *Hadley*, 66 Cal. App. 370 [226 Pac. 836].)"

It follows that the first cause of action, which attempts, in an action in the superior court, to enforce the provisions of the Flume Company contract as against the subsequent orders of the Railroad Commission and thereby to nullify its orders, fails to state a cause of action.

The action for damages was based on a violation of the terms of the Flume Company contract which had been superseded by the rates established by the commission. As the rates established in the contract cannot be enforced between the parties it follows that violation of the terms of that contract can furnish no ground for an action for damages.

The question presented under the third cause of action seeking declaratory relief is somewhat different but we believe its answer is equally simple.

An action for declaratory relief lies when there is an actual bona fide dispute between the parties as to a legal obligation arising under the circumstances specified in section 1060 of the Code of Civil Procedure. There must not only be a dispute between the parties but that controversy must be judicable. The plaintiffs must show that the dispute presents a question to which there is more than one answer. When the complaint alleges no facts showing an enforceable contractual right in the plaintiffs, and only a judgment for defendants can be entered, there is no judicable dispute and the action will not lie. · (*Merkley* v. *Merkley,* 12 Cal. (2d) 543 [86 P. (2d) 89].)

We have such a situation here. Plaintiffs base their claim to this relief on a contract that has been superseded by orders of the Railroad Commission. They have brought their action in a court that can grant them no relief. The third cause of action in seeking a determination of rights under a contract that has been superseded by orders of the Railroad Commission, fails to allege facts sufficient to state a cause of action for declaratory relief.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 3, 1942. Carter, J., voted for a hearing.