[Civ. No. 10121.   Third Dist.   Jan. 31, 1962.]

FRANCIS K. WILSON et al., Plaintiffs and Appellants, v.
THE TRANSIT AUTHORITY OF THE CITY OF
SACRAMENTO et al., Defendants and Respondents.

Lawrence M. Goldstein for Plaintiffs and Appellants.

Everett M. Glenn and E. R. Vaughn for Defendants and Respondents.

SPARKS, J. pro tem.*—Appeal is taken by plaintiffs from a judgment in favor of defendants after the entry of an order sustaining defendants' demurrer without leave to amend.

Plaintiffs, Wilson and DuBois, are the President and Secretary, respectively, of Local Division No. 256, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, a labor union. Defendant, Transit Authority of the City of Sacramento, was created by charter of said city for the purpose of acquiring and operating a public transportation system. The members of Local No. 256 are the employees of the defendants with relation to the buses owned and operated by said defendants. By specific charter provision, plaintiffs are not constituted members of the civil service system of the City of Sacramento. Appellant local purports to be, and is, recognized by defendants, as the sole and exclusive bargaining agent of all members of the local. Since the year 1955 the hours, wages and working conditions of plaintiffs have been determined by an agreement entered into on a yearly basis by and between said Local Division and defendant Transit Authority. In the agreement dated November 14, 1955, thus negotiated and entered into, there was included a clause which provided for the compulsory arbitration of grievances in the event of an impasse between plaintiffs and defendant Authority. At the close of the 1955 agreement (November 1956) the Union was told by the Authority that the arbitration clause could no longer be included in the contract. The reason given for its exclusion was the opinion of the city attorney that the inclusion of such clause would be illegal. Since November 1956 the yearly contracts between the Union and the Authority, and including the one now in force, have contained no arbitration clause.

Prior to the negotiation of the contract presently in force, appellants obtained opinions from both independent counsel and also from the office of the Legislative Counsel of the State of California, advising that the Authority might lawfully include such an arbitration provision in its contract with the

---

*Assigned by Chairman of Judicial Council.

Union. The Authority has nevertheless consistently maintained that it is bound to follow the opinion of the city attorney and has refused to include in the said agreement any provision for the arbitration of disputes. Plaintiffs alleged the existence of a justiciable controversy within the purview of section 1060 of the Code of Civil Procedure, which, if not settled "by this Honorable Court will result in the disruption of the peaceful and cooperative relationship between the parties all to the detriment of the parties and the public at large." The complaint then presented the following specific question to the court for adjudication:

"Can the said Transit Authority for The City of Sacramento lawfully include in an agreement entered into between it and the Plaintiffs a legally effective arbitration clause similar to Exhibit A covering the interpretation of the said contract and the resolution of grievances thereunder?"[1]

The demurrer denied the existence of a cause of action for declaratory relief principally because of an alleged lack of justiciable case or actual controversy.

After considering the problems presented by said demurrer, the trial court advised the parties by letter that in its opinion the crucial question was whether or not the defendant owed a duty to bargain collectively with the Union.[2]

---

[1] Exhibit A attached to plaintiffs' complaint sets forth a procedure for the compulsory arbitration of grievances between the members of Local Division #256 and the Transit Authority of the City of Sacramento, reading in part: "Should the AUTHORITY and the UNION fail to agree with respect to any grievance arising under this agreement within 3 days following the decision of the AUTHORITY, then the matter shall, upon written notice by the UNION or the AUTHORITY, be submitted to arbitration . . . The parties further agree . . . that the Arbitration Board shall render a written decision or award within five (5) days from the date of the conclusion of the hearing, and the decision shall be final and binding upon the parties."

[2] Letter from Honorable Fred R. Pierce to counsel reads:

"Gentlemen:

"In pondering the problems presented by the demurrer in the above case, I have considered the approach through the question of whether there is a *duty or obligation* on the part of the Transit Authority to BARGAIN collectively as distinct from the *power* to do so. And by 'bargain,' I do not mean *reach agreement.* If there is a duty or obligation to bargain then there must be a duty to bargain *in good faith* since payment of lip service to an obligation while maintaining a stubborn secret intention refusing to come to *any* agreement would be as effectively a failure to perform a public duty as would refusal to bargain at all. It would also seem to me to follow from a duty and obligation to bargain (i.e. negotiate) in good faith that the courts under their power to compel performance by administrative bodies of duties specially enjoined by law could require *negotiation* of all matters legally and properly within the scope of collective bargaining agreements—although the judiciary could *not* compel the exercise of a discretion in any particular way, i.e.,

The matter was then submitted to the court upon written briefs, and after reviewing the points and authorities presented the court decided that the respondent did not have such a duty. In a written memorandum of opinion the court said, in part: "In the Court's letter of June 17, 1960, it was suggested that if the defendant owed no duty to bargain collectively with the bus operators' union then, even though defendant may voluntarily (and legally) have undertaken so to bargain, no Court would have a right to dictate the specific subjects of collective bargaining negotiations; that so to do would be judicial usurpation of the administrative function. The Court has not changed its thinking in this regard." The trial court's conclusion on the matter was predicated primarily on the holding in *Nutter* v. *City of Santa Monica,* 74 Cal. App.2d 292 [168 P.2d 741], to the effect that section 923 of the Labor Code does not apply to public employees and that there was therefore no duty on the part of the Transit Authority to bargain collectively with Local No. 256. The court reasoned that since the execution of the contract in the first instance was entirely voluntary and optional on the part of the Transit Authority, that there could be no legal compulsion as to the inclusion or exclusion of any particular clause or term thereof.

Thereafter plaintiffs moved the court for permission to amend their complaint, alleging, among other things, that the Transit Authority was an independent proprietary enterprise. The request to amend was denied.

As against a general demurrer, a complaint, of course, must be liberally construed in order to determine if it states

---

could not compel the administrative body to reach any particular agreement.

"Conversely if there is no legal duty or obligation on the part of the public body to bargain collectively with a union at all (even though it has the power to do so), then this court would seem clearly to have no jurisdiction over that which the public body undertakes voluntarily. In other words, if the decision of whether it will negotiate at all is within the sole and absolute discretion of defendant, then any compulsion by the court would be an unconstitutional interference with administrative discretion.

"I would appreciate, therefore, if counsel in their written presentation to the court will deal with the question: Does the Sacramento Transit Authority have any obligation either by statute, charter or case law to negotiate at all with this, or any union? I incline now to the belief that this is the decisive factor in ruling on this demurrer.

Yours very truly,
Fred R. Pierce,
FRP:cab                                        Judge of the Superior Court."

a cause entitling plaintiffs to any relief, legal, equitable or extraordinary. (*Augustine* v. *Trucco,* 124 Cal.App.2d 229 [268 P.2d 780] ; *Buxbom* v. *Smith,* 23 Cal.2d 535 [145 P.2d 305] ; *Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34 [172 P.2d 867] ; *Tristam* v. *Marques,* 117 Cal.App. 393 [3 P.2d 947].) ■ All facts of the complaint which are well pleaded must be deemed admitted for the purpose of ruling on the demurrer. (*Boren* v. *State Personnel Board,* 37 Cal.2d 634 [234 P.2d 981] ; *Crescent Inv. Co.* v. *Lake County Inv. Co.,* 38 Cal.App. 642 [177 P. 167] ; *Simmons* v. *Briggs,* 69 Cal.App. 447 [231 P. 604].) ■ The policy of liberal construction is particularly appropriate to complaints in actions for declaratory relief. (*Foster* v. *Masters Pontiac Co.,* 158 Cal.App.2d 481 [322 P.2d 592].)

In order to apply these general rules of construction to the matter before us, and however much we may agree with the logic of the trial court in its approach to the problem, we are nevertheless of the opinion that its decision must be considered either as the refusal to exercise the power of declaratory relief under section 1061 of the Code of Civil Procedure, or a determination that the complaint failed to show an actual controversy involving a justiciable question.

Section 1061 of the Code of Civil Procedure provides:

''The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.''

■ It has long been recognized that the prerogative of granting or of denying declaratory relief rests in the discretion of the court. (2 Anderson, Actions for Declaratory Judgments, § 383, p. 913.) This discretion is, of course, not unlimited but must be exercised in a legal or judicial manner. (*Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747] ; *Kessloff* v. *Pearson,* 37 Cal.2d 609 [233 P.2d 899].) ■ It has been suggested that it is perhaps better practice for a trial court to exercise its discretion in refusing declaratory relief by some procedure other than by sustaining a general demurrer, such as, upon a motion to dismiss the complaint. (*Moss* v. *Moss,* 20 Cal.2d 640 [128 P.2d 526, 141 A.L.R. 1422] ; *Simpson* v. *Security First Nat. Bank,* 71 Cal.App.2d 154 [162 P.2d 494].) Nevertheless, where the complaint is devoid of essential facts showing the necessity or propriety of a declaration, it is not reversible error per se to refuse declaratory relief by an order

sustaining a general demurrer without leave to amend. (*Moss* v. *Moss, supra*; *Lord* v. *Garland,* 27 Cal.2d 840, 852 [168 P.2d 5]; *Simpson* v. *Security First Nat. Bank, supra*; *Dunitz* v. *City of Los Angeles,* 170 Cal.App.2d 399 [338 P.2d 1001]; *Schessler* v. *Keck,* 125 Cal.App.2d 827 [271 P.2d 588]; *Caldwell* v. *Gem Packing Co.,* 52 Cal.App.2d 80 [125 P.2d 901]; *A. Hamburger & Sons, Inc.* v. *Kice,* 129 Cal.App. 68 [18 P.2d 115]; *Rapaport* v. *Forer,* 20 Cal.App.2d 271 [66 P.2d 1242].)

■ Irrespective of the applicability of said section 1061, the action of the trial court in sustaining the demurrer without leave to amend was clearly correct upon the second ground, namely, that the complaint failed to show an actual controversy between the parties. The highly useful function of declaratory relief actions, when employed within proper limits, cannot be minimized. The frequency with which the pleading form is utilized attests to its value in disposing of controversies and in stabilizing doubtful or disputed jural relationships. (*Columbia Pictures Corp.* v. *DeToth, supra.*)

■ An essential requirement of the procedure, however, is that there be a real controversy between parties, involving *justiciable questions* relating to their rights and obligations. Facts and not conclusions of law must be pleaded which show a controversy of concrete actuality as opposed to one which is merely academic or hypothetical (*City of Alturas* v. *Gloster,* 16 Cal.2d 46 [104 P.2d 810]; *American Mission Army, Inc.* v. *City of Lynwood,* 138 Cal.App.2d 817 [292 P.2d 533]); for, as has been aptly said, a statute providing for a declaration of rights "does not constitute a court a fountain of legal advice." (*Washington-Detroit Theater Co.* v. *Moore,* 249 Mich. 673 [229 N.W. 618, 68 A.L.R. 105]; *City of Flint* v. *Consumers Power Co.,* 290 Mich. 305 [287 N.W. 475].)

In 26 Corpus Juris Secundum, Declaratory Judgments, section 30, page 107, the general rule is given as follows:

". . . [D]eclaratory relief will be awarded, only where there is a justiciable controversy, a declaratory judgment proceeding is not available to secure judicial answers to questions that are merely theoretical, hypothetical, academic, or abstract in the sense that they are not related to a particular object or thing. . . . A difference of opinion does not give rise to a justiciable case until an actual concrete controversy arises. . . .

"Declaratory judgment statutes do not authorize the courts to give advisory opinions."

To the same effect is the following quotation from volume 2 of the permanent edition of Words and Phrases, page 340: "Mere difference of opinion is not 'actual controversy' within Declaratory Judgment Act."

In a leading case on the subject in the federal jurisdiction (*Aetna Life Ins. Co.* v. *Haworth,* 300 U.S. 227 [57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000]), the Supreme Court stated:

"A 'controversy' in this sense must be one that is appropriate for judicial determination. . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

Holdings consistent with the general rules stated in the foregoing quotations are found in our California decisions, as follows:

*City of Alturas* v. *Gloster,* 16 Cal.2d 46, 48 [104 P.2d 810]:

". . . To state a cause of action for declaratory relief under section 1060 of the Code of Civil Procedure appropriate facts should be alleged from which the court may determine that an 'actual controversy relating to the *legal* rights and duties of the respective parties' exists."

*Ephraim* v. *Metropolitan Trust Co.,* 28 Cal.2d 824, 836 [172 P.2d 501]:

". . . And since no present legal controversy exists, a cause of action for declaratory relief is not stated."

*Merkley* v. *Merkley,* 12 Cal.2d 543, 547 [86 P.2d 89]:

". . . The facts in the record present an academic question only. The courts will not exercise the discretionary power to declare rights which do not give rise to a present controversy."

*Gillies* v. *La Mesa etc. Irr. Dist.,* 54 Cal.App.2d 756, 762 [129 P.2d 941]:

"An action for declaratory relief lies when there is an actual bona fide dispute between the parties as to a legal obligation arising under the circumstances specified in section 1060 of the Code of Civil Procedure. There must not only be a dispute between the parties but that controversy must be judicable."

*Monahan* v. *Department of Water & Power,* 48 Cal.App.2d 746, 751 [120 P.2d 730]:

". . . [W]e may well observe that not only must the controversy be a justiciable controversy, as distinguished from 'a difference or dispute of a hypothetical or abstract character; from one that is academic or moot,' but it must be 'definite and concrete, touching the legal relations of the parties having adverse legal interests.' [Citing case.] ▮ In short, the controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. *The judgment must decree, and not suggest, what the parties may or may not do.*" (Italics added.) (See also *Conroy* v. *Civil Service Com.*, 75 Cal.App.2d 450 [171 P.2d 500]; *Dunitz* v. *City of Los Angeles,* 170 Cal.App.2d 399 [338 P.2d 1001]; *American Mission Army, Inc.* v. *City of Lynwood,* 138 Cal. App. 2d 817 [292 P.2d 533]; *Weissman* v. *Lakewood Water & Power Co.,* 173 Cal.App.2d 652 [343 P.2d 776]; *Oppenheimer* v. *General Cable Corp.,* 143 Cal.App.2d 293 [300 P.2d 151]; *Silva* v. *City & County of San Francisco,* 87 Cal.App.2d 784 [198 P.2d 78]; *Fairchild* v. *Bank of America,* 192 Cal. App.2d 252 [13 Cal.Rptr. 491].)

▮ Relating these rules to the matter now being reviewed, we conclude that the complaint in the instant action, after giving it the liberal construction to which it is entitled upon general demurrer, fails to state a justiciable controversy. As we have noted, the mere allegation that such a controversy exists is not sufficient. From the facts that are alleged in the complaint, it appears that plaintiffs, after bargaining collectively, have in successive previous years entered into written contracts with defendant Transit Authority as to hours, wages and working conditions, and that such a contract was in full force and effect at the time of the filing of said complaint. No allegation was made in the complaint that there was at the time of the filing of said action any unsettled grievance or other controversy pending under the existing contract, and relating to the rights and duties of the parties thereto. On the contrary, the alleged difficulty concerned a provision *not in the contract,* and about the legality of which there was a difference of opinion among counsel. We find the following language in *Conroy* v. *Civil Service Com., supra,* page 454, specifically applicable:

". . . What was really sought was an advisory opinion applying to all 1,300 members, generally, without regard to any acute, specific or pending controversy, so that there would

be available and ready for use in any dispute arising in the future a judicial interpretation''—or, in other words, an advisory opinion on a question of law.

Appellants contend that the question of whether there was a duty upon defendant Transit Authority to bargain collectively with plaintiffs was irrelevant and not germane to the consideration of the demurrer, and that "it was only because of the trial Court's insistence upon forcing the issue upon appellants that counsel for the appellants through an abundance of caution dealt with it." ▮ Appellants also contend that the question of the legality of the arbitration clause is one of great public interest, and for that reason, the rule requiring a "justiciable controversy" should be relaxed. However, it is not clear in what manner a merely advisory decision of no binding effect could reasonably be expected to enhance peaceful relations between the parties, or be in the public interest. No contention was made that it would be compulsory upon the Transit Authority to include any such arbitration clause, if declared legal, in any ensuing contract with plaintiff. Nor is this a situation as was presented in *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269 [83 A.2d 482, 31 A.L.R.2d 1133], in which the parties joined in the action in order to obtain a declaration as to their respective rights and obligations, and agreed that they would be bound by such declaration. On the contrary, defendants in the trial court, and before us, have vigorously contested the authority of the court to make such a declaration in the first instance. Neither have they indicated in any way that, if such a declaration were made, they would agree to placing such arbitration provision in the contract. In its memorandum of decision, the trial court characterized the situation as follows: "As I see this problem, it is not one where a union and a public body, both desiring to perform an act, doubt the latter's power so to do. It is rather a case where the public agency, *not* desiring to do an act, challenges the Court's power to command the doing of the act irrespective of the public agency's reason." It concluded that any attempt by the court to dictate the subjects of collective bargaining would constitute judicial usurpation of an administrative remedy. This conclusion must be upheld. ▮ The Declaratory Relief Act does not purport to confer upon courts the authority to control administrative discretion. (*Monahan* v. *Department of Water & Power, supra; Welch* v. *City of Long Beach,* 109 Cal.App.2d

561 [241 P.2d 46].) Under such circumstances, it is quite apparent that the declaratory judgment sought would be purely advisory on a question of law, and in no way would be obligatory upon the parties in future negotiations. Even under the most liberal interpretation of "justiciability" there must be presented something more than a hypothetical question which, when resolved, would not be binding upon the parties, and which either party at its option would be free to reject. (*Monahan* v. *Department of Water & Power, supra*; *Conroy* v. *Civil Service Com., supra*; *Merkley* v. *Merkley, supra*.) ▮▮▮▮ The trial court's refusal to grant the advisory opinion requested was not under the circumstances an abuse of discretion. The proposed amendment of the complaint would not have changed the legal aspects of the situation, and would have served no practical purpose. The trial court correctly denied it.

The judgment is affirmed.

Schottky, J., concurred.

PEEK, P. J.—I dissent. Although I am not entirely convinced of the validity of the majority's treatment of plaintiffs' first contention, it seems unnecessary to discuss at length my reasons therefor, since I am convinced that the second contention made by plaintiffs compels a reversal.

"The rule that the courts will not consider a case in the absence of a justiciable, actual, or bona fide controversy . . . is subject to the exception in cases wherein the question involved is of great public interest. Then the rule requiring the existence of a justiciable controversy is not followed, or is relaxed. It seems that the courts have assumed that they possess inherent power to give a declaratory judgment as to matters of public concern." (1 Anderson, Actions for Declaratory Judgments, § 63, p. 126.)

It appears to me that the factual situation set forth in plaintiffs' complaint, which by their demurrer defendants admit, brings this case squarely within the exception to the general rule. The majority, however, holds that even under what it considers to be the most liberal interpretation of "justiciability," nevertheless even when applied to matters of public interest there must be presented something more than a hypothetical question which, when resolved, would not be binding on the parties. Several cases are cited in support of this conclusion, but in none of the cases so cited was the issue of public interest presented.

The closest approach which our courts have made to the specific question is found in comments such as in *Hayden Plan Co.* v. *Friedlander*, 97 Cal.App. 12, 14 [275 P. 253]. In that case the question presented was whether or not plaintiff was required to have a permit to issue securities. In declining to pass on the question, the court held that there was no actual dispute and further that ''There is nothing of particular public interest involved.'' But as to what the court would have held had there been a ''particular public interest'' we can only speculate. However, that holding does indicate that consideration would have been given had such a situation been presented. Here we are confronted with a statute which ''should be construed with reasonable liberality'' (15 Cal.Jur. 2d, Declaratory Relief, § 4, p. 101; see also 16 Am.Jur., Declaratory Judgments, § 8, p. 282) and an action which is essentially one in equity (*Adams* v. *Cook*, 15 Cal.2d 352 [101 P.2d 484]). Surely then, in a proper case traditional rules of procedure and interpretation should give way to the exception previously noted. In other words, if the public interest is such that it is a primary concern, then hard and fast rules predicated upon legal technicalities must be relaxed; otherwise, the very public interest sought to be protected will suffer. (See *State* ex rel. *Miller* v. *State Board of Education*, 56 Idaho 210 [52 P.2d 141].)

In the present case it is the element of public interest which presents something in addition to or more than that which is posed in the traditional hypothetical or academic controversy. Here plaintiffs have alleged that from its inception the defendant Transit Authority recognized Local 256 as the sole and exclusive bargaining agent for its employees; that the specific arbitration clause in issue was originally inserted in the first contract in 1955; and that following the expiration of that contract the Authority has refused to include such a clause in any succeeding contract of the parties *solely* because of an opinion of the city attorney that such a clause was illegal. The complaint concluded with the allegation that the specific question to be determined was, could the Authority ''. . . lawfully include in an agreement entered into between it and the Plaintiffs a legally effective arbitration clause . . .'' similar to the one attached to the complaint, and prayed for an order of the court that it be declared lawful to include such a clause in the contract between the parties. In their briefs and before this court, counsel for plaintiffs further state that a judicial decision on the question posed, whether it be favorable to

plaintiffs or not, would set the question at rest once and for all, and that plaintiffs would abide thereby.

In the case of *Norwalk Teachers' Assn.* v. *Board of Education*, 138 Conn. 269 [83 A.2d 482, 483, 31 A.L.R.2d 1133], a similar situation was presented. There the plaintiff Teachers' Association sought a declaration by the court of 10 questions, all relating to the collective bargaining agreement between them and the board of education. One of the specific questions asked related to the question of arbitration. Also there, as here, the complaint referred to the " 'possibility of strikes, work stoppage or collective refusals to return to work by the teachers . . . and the possibility of discharges or suspensions by the defendant by reason of difficult personnel relations, all of which tends to disharmony in the operation of the school system and of the ever present possibility that either, or both, the parties may be unwittingly violating statutes by reason of mistaken or erroneous interpretation thereon.' " The complaint in the present action poses comparable problems, but in more diplomatic terms.

The majority opinion seeks to distinguish the *Norwalk* case on the ground that there the disputed arbitration clause was presently in the existing contract when the action was brought and that both parties had agreed in advance to abide by whatever order the court might make. It is neither contended nor intimated that a like situation would not prevail in the present case. The mere raising of issues does not mean that both parties do not desire a determination of them, or that they would refuse to abide by a judicial determination thereof. Here the arbitration clause was in the first contract negotiated between the parties. Thereafter, it was eliminated solely for the reason that the city attorney had advised the Authority that "said arbitration clause was unlawful as an illegal delegation of responsibility" of said defendants and from then on plaintiffs had tried vainly to have the clause reinserted in the annual contract negotiated between the parties, but have been met with the same reply.

Plaintiffs note that the position taken by the city attorney is contrary to an opinion prepared by the Legislative Counsel of the California Legislature, pursuant to a request of a member of that body. That opinion specifically noted that no provision had been found which would prohibit the Authority from including a like clause and in support of its conclusion, cited the *Norwalk* case and *Cary* v. *Long*, 181 Cal. 443 [184

P. 857]. In the latter case the court held that a municipal corporation had the power to submit to arbitration a question of damages. By analogy, the Legislature could conclude that if this could be done by a municipal corporation, then within the limitations of the *Norwalk* case, the Authority could likewise submit to arbitration questions arising under the provisions of the contract between it and its employees.

Certainly, the public interest could be no less because the clause is not presently a part of the contract between the parties herein. Hence, to refuse relief on this ground would seem to place form over substance. Furthermore, it seems to me to be wholly immaterial whether both parties join in seeking the same relief or not, since the entire controversy may be settled without the need of a compulsive decree commanding anyone to do anything. The precise question presented is whether the defendant Transit Authority has the power to lawfully insert the arbitration clause in the contract. The trial court was not asked to order it to do so even if it were found that the inclusion would be legal. In fact, to do so would be to go beyond the issues as framed by the pleadings.

Under the existing facts, neither Labor Code section 65, nor Code of Civil Procedure section 1280 are applicable. Hence, it further appears to me to be of extreme importance to note the dilemma which confronts plaintiffs. If the declaration is refused they have no other legal remedy. Their only recourse is a work stoppage and the probability of subsequent injunction proceedings, with the end result that the general public welfare will suffer. Surely our courts are not so impotent that such drastic action must be taken before a court can intervene. The total lack of any other remedy was also noted in the *Norwalk* case. In view of the recent case of *Los Angeles Metropolitan Transit Authority* v. *Brotherhood of R.R. Trainmen,* 54 Cal.2d 684 [355 P.2d 905], any discussion of the legality of like action on the part of plaintiffs becomes unnecessary. But legal or not, we know that work stoppages do occur in government, particularly where government is engaged in proprietary activities such as in the present case. (See Ziskind, One Thousand Strikes of Government Employees [1940].)

It would seem to me that the question presented, directly affecting as it does a large urban area, is the precise situation wherein the exception should be invoked and, paraphrasing what the court held in *Maguire* v. *Hibernia S. & L. Soc.,*

23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062], thereby serve a very practical end in stabilizing an uncertain relationship which well may deteriorate to the detriment of the entire community.

I would reverse the order and judgment of the trial court.