[Civ. No. 8149.   Fourth Dist., Div. One.   Apr. 8, 1966.]

ESCONDIDO MUTUAL WATER COMPANY, Plaintiff and Respondent, v. GEORGE A. HILLEBRECHT, INC., Defendant and Appellant.

Sachse & Cooley and Franz R. Sachse for Defendant and Appellant.

Glenn & Wright, Eugene Glenn, O'Melveny & Myers, Lauren M. Wright and Howard J. Deards for Plaintiff and Respondent.

STONE, J.*—Respondent, Escondido Mutual Water Company, brought this action for declaratory relief, seeking court approval of a proposed contract for the sale of its water rights and water distribution facilities to the City of Escondido. The contract, although apparently approved by the directors of Mutual and by the city council, has never been executed. Nor has the contract been approved by the shareholders of Mutual, as required by Corporations Code section 3901, governing a sale of all or substantially all of a corporation's assets.

The articles of incorporation of Mutual provide that upon dissolution the water and water rights are to be distributed in kind according to whether shareholders own Class A or Class B stock. A proposed amendment to the articles providing for distribution in cash, $5.25 per share for Class A stock and $2.30 per share for Class B stock, was also presented to the court for approval although the amendment has not been approved by the shareholders.

All stockholders were notified of the pending declaratory relief action, and certain stockholders from each class were made defendants, one of them being the appellant herein.

The trial court found the consideration for the sale of Mutual's assets to the city to be fair and reasonable, based upon an appraisal made in 1962. The court also found the terms of the contract just and reasonable, and entered a judgment declaring the contract, ''when and if the same is approved by the vote or written consent of the holders of a majority of the

---

*Assigned by the Chairman of the Judicial Council.

outstanding Class A stock and of the outstanding Class B stock of Mutual, taken together, and is executed by City and Mutual, will be in all respects a valid, binding and subsisting agreement in favor of and against the parties thereto, and the shareholders of Mutual.''

Manifestly, the judgment does not declare the rights of the parties under an existing contract but, rather, hypothetical rights that may or may not arise, depending upon contingencies. Whether there will be a contract depends upon approval of the proposed sale of assets by a majority of the shareholders and upon an amendment to the articles of incorporation of Mutual. The judgment so provides.

Appellant first urges that the court lacked jurisdiction to hear the matter because no justiciable issue was presented to the court, that is, no contract was in existence for the court to construe. Code of Civil Procedure section 1060 provides that any person interested ''under a contract,'' in cases of actual controversy relating to the ''legal rights and duties of the respective parties,'' may bring an action in the superior court for a declaration of his rights and duties thereunder. Since the proposed contract was not executed, appellant contends there was no contract and no actual controversy, and that no valid declaration of legal rights and duties could be made.

Anderson on Actions for Declaratory Judgments (2d ed.), volume 2, chapter 12, section 585, discussing declaratory relief actions in relation to the validity and construction of contracts, says, at page 1304: ''In order for a declaratory action to be maintainable to determine the validity and construction of a contract, *it is necessary that the contract be an existing one, and not merely one in contemplation,* since a contemplated contract can not, in advance of an agreement as to the terms thereof, present a justiciable controversy. But a different situation is presented where the contract has already been entered into, then the courts will take jurisdiction by resort to declaratory procedure and determine the meaning of the contract, and the rights and liabilities of the parties thereunder.'' (Italics added.)

In *City of Alturas* v. *Gloster,* 16 Cal.2d 46, the Supreme Court said, at page 48 [104 P.2d 810] : ''To state a cause of action for declaratory relief under section 1060 of the Code of Civil Procedure appropriate facts should be alleged from which the court may determine that an 'actual controversy relating to the *legal* rights and duties of the respective parties' exists.''

In short, courts will not burden themselves with proceedings predicated on contingencies that necessarily result in advisory opinions.

Respondent asserts the requirement of an executed contract, that is, a contract in being, in order to present a justiciable issue is not an inflexible condition to declaratory relief jurisdiction. It points to the analogy of declaratory relief actions to determine liability under a contract of insurance. While it is true there are numerous instances of courts declaring rights and duties under an insurance contract in relation to third parties, we know of no instance in which a court has taken the additional step respondent asks us to take here, and declared rights and duties under a proposed contract of insurance.

Respondent would have us deviate from the classic rules governing declaratory relief, and follow a dissent in *Wilson* v. *Transit Authority*, 199 Cal.App.2d 716 [19 Cal.Rptr. 59]. In that case the majority opinion affirmed a denial of declaratory relief in an action seeking approval of a proposed arbitration clause to be incorporated in a collective bargaining agreement yet to be executed. Mr. Justice Peek (then Presiding Justice of the District Court of Appeal, Third Appellate District), in dissenting, quoted a statement from Anderson, Actions for Declaratory Judgments, *supra,* volume 1, section 63, page 126 : " 'The rule that the courts will not consider a case in the absence of a justiciable, actual, or bona fide controversy . . . is subject to the exception in cases wherein the question involved is of great public interest. Then the rule requiring the existence of a justiciable controversy is not followed, or is relaxed. It seems that the courts have assumed that they possess inherent power to give a declaratory judgment as to matters of public concern.' " (P. 726.) He concluded that even though the clause which the parties wished construed by the court was not at that time incorporated in a contract, interest in averting a strike by transit workers and consequent inconvenience to the public constituted a matter of sufficient public concern to warrant declaratory relief.

■ Certainly, in circumstances that present a matter of public interest, a court should employ its equity jurisdiction to the outermost limits, but here the basic reason for Mutual and the city getting the cart before the horse is that Mutual must distribute its assets within one year from the time of its adoption of a plan for liquidation or pay a federal income tax at the rate of 25 percent on the difference between the sale

price and the adjusted cost basis of its assets for tax purposes.

We have serious doubts that private economic considerations qualify as matters of public interest within the rationale of either the dissent in *Wilson* or the statement in Anderson's work, *supra*. In this case there is a practical consideration in addition to the theoretical question of private versus public interest that must be considered. If the declaratory judgment is allowed to stand, it will be res judicata and binding on the shareholders even though the selling price is based upon a 1962 appraisal. There is no time limitation for meeting the contingencies upon which the contract becomes effective, so that if approved in 1966, or even later, the earlier appraisal may well be obsolete and not a reflection of fair market value. We are impelled to conclude that the court erred in construing and declaring the validity of the proposed contract.

We turn now to the portion of the judgment touching upon the proposed amendment to the articles of incorporation of Mutual, and the distribution of assets upon dissolution. Respondent argues that the articles of incorporation constitute a contract between Mutual and its shareholders which justifies a declaratory judgment as to the proposed alteration of that contract by amendment of the articles of incorporation, thus permitting distribution of assets other than water rights upon dissolution. As to this aspect of the action the judgment provides: ''That the proposed amendment to Mutual's Articles of Incorporation with respect to distribution of assets on dissolution as set forth in finding 25 of the Findings of Fact herein is fair, just and reasonable, and when and if the same is approved by the holders of two-thirds of Mutual's outstanding Class A stock and two-thirds of Mutual's outstanding Class B stock, and when an appropriate certificate of amendment to Mutual's Articles of Incorporation is filed in the office of the California Secretary of State, will be a valid and binding amendment to said Articles of Incorporation and that Mutual will be enabled and required to make distribution upon dissolution in accordance therewith. ''

This part of the judgment unqualifiedly purports to control the dissolution of Mutual upon the sale of its assets to the city, but a court cannot direct or control dissolution of a corporation in futuro. We reach this conclusion after considering the following language of *In re Security Finance Co.*, 49 Cal.2d 370, at pages 375-376 [317 P.2d 1] : ''At common law a cor-

poration had no power to end its existence. The shareholders could surrender the charter, but actual dissolution depended on acceptance by the sovereign. Whether or not surrender of the charter of a prosperous corporation could be effected by a majority of the shareholders was long a subject of dispute. [Citations.] The fact that powers necessary for the attainment of corporate objectives were ordinarily vested in the majority did not necessarily mean that the minority should have no say on the fundamental issue of corporate life or death. In California, as in many other states, general statutory provisions authorize voluntary dissolution with the consent of a certain percentage of the shareholders.

"Section 4600 of the Corporations Code provides that, 'Any corporation may elect to wind up its affairs and voluntarily dissolve by the vote or written consent of shareholders or members representing 50 percent or more of the voting power.' Section 4607 provides that, 'If a corporation is in the process of voluntary winding up, the superior court . . . upon the petition of . . . (b) the holders of 5 percent or more of the number of its outstanding shares . . . may make orders and adjudge as to any and all matters concerning the winding up of the affairs of the corporation.' Sections 4608 to 4619 provide that the jurisdiction of the court includes the determination of claims against the corporation and the rights of the shareholders in the assets, the settlement of directors' accounts, the appointment of referees, and other matters necessary for the equitable settlement of corporate affairs.

"The court has jurisdiction by virtue of section 4607 only if the corporation is 'in the process of voluntary winding up,' and the corporation is in the process of voluntary winding up only if a valid election to wind up has been made pursuant to section 4600." (See also *Keeler* v. *Schulte,* 47 Cal.2d 801, 803 [306 P.2d 430]; *Stubbs* v. *Jones,* 121 Cal.App.2d 218, 222 [263 P.2d 100]; *In re O'Brien Machinery, Inc.,* 224 Cal.App. 2d 563, 570 [36 Cal.Rptr. 782].)

Respondent points out that this is not a section 4607 proceeding; nevertheless the declaratory judgment, if allowed to stand, will be res judicata in any subsequent dissolution and deprive the shareholders of their right to a section 4607 proceeding. The *Security Finance* case holds that this cannot be done.

■ Since there was no election to dissolve Mutual pursuant to Corporations Code section 4600, we conclude that the

court was without jurisdiction to declare terms and conditions of dissolution when and if it occurred at some future time.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 3, 1966, and respondent's petition for a hearing by the Supreme Court was denied June 1, 1966.